[Cite as *Walker v. Shondrick-Nau*, 2014-Ohio-1499.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

JON WALKER, JR., )
)
    PLAINTIFF-APPELLEE, )
) CASE NO. 13 NO 402
VS. )
) OPINION
PATRICIA J. SHONDRICK-NAU, )
EXECUTRIX OF THE ESTATE OF JOHN )
R. NOON AND SUCCESSOR TRUSTEE )
OF THE JOHN R. NOON TRUST, )
)
    DEFENDANT-APPELLANT. )

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from Court of Common Pleas of Noble County, Ohio Case No. 212-0098 |
| JUDGMENT: | Affirmed |
| APPEARANCES: | |
| For Plaintiff-Appellee | Attorney Kenneth Cardinal 758 N. 15th St. Sebring, Ohio 44672 |
| | Attorney James F. Mathews 400 South Main St. North Canton, Ohio 44720 |
| For Defendant-Appellant | Attorney James Hughes, III Attorney Matthew Warnock Attorney Daniel Gerken 100 South Third St. Columbus, Ohio 43215 |

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: April 3, 2014

[Cite as *Walker v. Shondrick-Nau*, 2014-Ohio-1499.]
DONOFRIO, J.

{¶1} Defendant-appellant, Patricia J. Shondrick-Nau, Executrix of the Estate of John R. Noon and Successor Trustee of the John R. Noon Trust, appeals from a Noble County Common Pleas Court judgment granting summary judgment in favor of plaintiff-appellee, Jon Walker, Jr., on appellee's claim to quiet title as to the mineral estate (specifically oil and gas interests) underlying a tract of land in Noble County.

{¶2} John Noon purchased the disputed property, located in Enoch Township, in 1964. On July 26, 1965, Noon severed the mineral rights and created a separate mineral estate by reserving the mineral rights to himself when he sold the surface rights on that date.

{¶3} In 1970, the surface rights to the property were sold twice. In both of the 1970 conveyances, the deeds included the mineral rights reservation and referenced the volume and page number where the mineral rights reservation was recorded. In 1977, the surface rights were sold again. And again the deed included the mineral rights reservation and referenced the volume and page number where the mineral rights reservation was recorded.

{¶4} Appellee purchased the subject property in 2009. The property is described in two deeds. The first tract of land is 37.042 acres and the second tract is 5.186 acres.

{¶5} On December 2, 2011, appellee sent a notice of abandonment of mineral interest to Noon.

{¶6} On January 10, 2012, Noon filed an affidavit and claim to preserve mineral interest.

{¶7} On April 27, 2012, appellee filed a complaint for declaratory judgment and to quiet title. He requested that the trial court rule that he is the lawful owner of the mineral rights. Appellee asserted that the mineral rights merged with the surface estate no later than March 22, 1992, by way of the prior version of R.C. 5301.56 (the Ohio Dormant Mineral Act), which was in effect from March 22, 1989, until June 30, 2006. He also claimed Noon abandoned any interest in the mineral rights when he failed to preserve them from expiring.

{¶8} Noon filed a motion for summary judgment. He alleged that the filing of a mineral preservation notice pursuant to R.C. 5301.56(H) preserved the severed mineral interest and R.C. 5301.56(D) indefinitely preserves a severed mineral interest. On these bases, Noon claimed he was entitled to summary judgment on appellee's claims.

{¶9} Appellee then filed a cross-motion for summary judgment. He asserted that because the transactions relied upon by Noon did not represent title transactions in the mineral estate, those transactions did not operate as a savings event under R.C. 5301.56.

{¶10} The trial court found that no facts were in dispute. The court framed the question before it as, "do the surface transfers in 1970 and 1977 count as 'title transactions'?" The court answered in the negative. The court found that although the transactions were within the 20-year period prior to March 22, 1989, they did not affect an interest in land as contemplated by R.C. 5301.56(F). The court further found that any discussion of the current version of R.C. 5301.56, effective June 30, 2006, was moot because as of June 30, 2006, any interest Noon had in the mineral rights had already been abandoned. Therefore, the trial court granted appellee's motion for summary judgment and denied Noon's motion for summary judgment. It went on to declare that appellee is the true and rightful owner of the oil and gas underlying the subject property and that Noon has no interest in the subject oil and gas.

{¶11} Noon filed a timely notice of appeal on April 17, 2013. Noon passed away after the filing of this appeal. His daughter, Shondrick-Nau, in her capacity as the executrix of Noon's estate and successor trustee of Noon's trust, was substituted as the appellant in this case.

{¶12} Appellant raises two assignments of error. The assignments of error share a common basis in law and fact. Appellant then raises three distinct issues for review. For ease of discussion, we will treat each issue for review separately.

{¶13} Appellant's assignments of error state:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR PLAINTIFF-APPELLEE.

THE TRIAL COURT ERRED IN NOT GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-NOON.

{¶14} In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶15} This case involves the application of the current and prior versions of R.C. 5301.56, known as Ohio's Dormant Mineral Act.

{¶16} The prior version of R.C. 5301.56 was enacted on March 22, 1989. The 1989 version of R.C. 5301.56 provided, in pertinent part:

(B)(1) Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface, if none of the following applies:

* * *

(c) Within the preceding twenty years, one or more of the following has occurred:

(i) The mineral interest has been the subject of a title transaction that had been filed or recorded in the office of the county recorder of the county in which the lands are located[.]

\* \* \*

(2) A mineral interest shall not be deemed abandoned under division (B)(1) of this section because none of the circumstances described in that division apply, until three years from the effective date of this section.

{¶17} The current version of R.C. 5301.56 became effective on June 30, 2006. The most substantial change to the statute was the addition of the notice requirements giving the owner of the abandoned mineral interest the opportunity to reclaim his or her interest. R.C. 5301.56 now provides, in pertinent part:

(B) Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied and none of the following applies:

(1) The mineral interest is in coal, or in mining or other rights pertinent to or exercisable in connection with an interest in coal \* \* \*.

(2) The mineral interest is held by the United States, this state, or any political subdivision, body politic, or agency of the United States or this state \* \* \* .

(3) Within the twenty years immediately preceding the date on which notice is served or published under division (E) of this section, one or more of the following has occurred:

(a) The mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located.

(b) There has been actual production or withdrawal of minerals by the holder * * *.

(c) The mineral interest has been used in underground gas storage operations by the holder.

(d) A drilling or mining permit has been issued to the holder, * * *.

(e) A claim to preserve the mineral interest has been filed in accordance with division (C) of this section.

(f) In the case of a separated mineral interest, a separately listed tax parcel number has been created for the mineral interest in the county auditor's tax list and the county treasurer's duplicate tax list in the county in which the lands are located.

* * *

(E) Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface of the lands subject to the interest shall do both of the following:

(1) Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.

(2) At least thirty, but not later than sixty days after the date on which the notice required under division (E)(1) of this section is served or published, as applicable, file in the office of the county recorder of each county in which the surface of the land that is subject to the

interest is located an affidavit of abandonment that contains all of the information specified in division (G) of this section.

**{¶18}** The definition of a "title transaction," which is defined in R.C. 5301.47, did not change between the two versions of R.C. 5301.56. A "title transaction" is "any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage." R.C. 5301.47(F).

**{¶19}** With these statutes in mind, we turn now to appellant's issues for review.

**{¶20}** Appellant's first issue for review asserts:

A title transaction that transfers the ownership of the surface rights and clearly references and reserves the mineral interest preserves a mineral interest under R.C. 5301.56(C).

**{¶21}** Appellant contends here that the mineral rights at issue were the subject of a title transaction during the applicable 20-year look-back period. Because the mineral rights were the subject of a title transfer during the 20-year period that was recorded in the county recorder's office, appellant claims the rights were not subject to forfeiture. Appellant points out that this argument is valid under both the prior and the current versions of R.C. 5301.56.

**{¶22}** Appellant argues that in reaching its decision, the trial court effectively added the word "only" to the beginning of R.C. 5301.56(B)(3)(a) in finding the interest to be conveyed must be the mineral interest itself and nothing else. Appellant states there is no dispute that there was a clear exception of the mineral interest in both the 1970 deed and the 1977 deed. She points out that all of the deeds recite Noon's mineral interest reservation, state the volume and page numbers on which the mineral estate reservation appears in the public record, and refer to Noon by name.

**{¶23}** Appellant goes on to argue that the "title transaction" savings event must be analyzed in the broader context of Ohio's Marketable Title Act (R.C. 5301.47 to R.C. 5301.56). She notes that a "mineral interest" is "a fee interest in at least one mineral regardless of how the interest is created and of the form of the interest." R.C. 5301.56(A)(3). She further notes that a "mineral" includes oil and gas. R.C. 5301.56(A)(4). She then points to the definition of "title transaction," which includes "any transaction affecting title to any interest in land." R.C. 5301.47(F). Appellant argues that when these definitions are read together, it becomes clear that the savings event occurs when the mineral interest has been the subject of *any* title transaction. She contends there is no requirement that the mineral interest is actually transferred.

**{¶24}** Appellant also contends that the statute's legislative history supports her interpretation. Appellant argues the Legislature's amendment to the language of the savings event from situations where the "interest has been conveyed" to situations where the "mineral interest had been the subject of a title transaction" evidences the Legislature's deliberate decision to eliminate the requirement that the mineral interest itself be conveyed or transferred in order to qualify as a savings event.

**{¶25}** In *Dodd v. Croskey*, 7th Dist. No. 12 HA 6, 2013-Ohio-4257 (discretionary appeal accepted by Ohio Supreme Court on a different issue, cross-appeal on this issue not accepted, 2013-1730), we examined whether an oil and gas interest was "the subject of" a title transaction. In 2009, when the appellants acquired the surface rights to the disputed property, the deed that conveyed the surface rights included a reservation of the oil and gas interest to the Porters, which included the date it had been filed (May 27, 1947) and the volume and page numbers where it could be found in the Recorder's Office. The trial court found that R.C. 5301.56(B)(3)(a) applied. It concluded that the mineral interest was the "subject of" the title transaction and that it had been filed within 20 years immediately preceding the publishing of notice under R.C. 5301.56(E).

**{¶26}** On appeal, we noted that the issue to be decided was whether the oil and gas interest was the "subject of" the title transaction. *Id.* at ¶41. We noted that the 2009 deed conveying the surface rights was a "title transaction" as defined by R.C. 5301.47(F). *Id.* at ¶43. We also noted that other than a Fifth District case, which we found unhelpful, there was no case law in Ohio discussing what "subject of a title transaction" means. *Id.* at ¶48. And we pointed out that "subject of" is not defined in the statute. *Id.* Thus, we looked to the phrase's ordinary meaning and construed it according to common usage. *Id.* We explained:

> The common definition of the word "subject" is topic of interest, primary theme or basis for action. Webster's II New Riverside Dictionary 11553 (1984). Under this definition the mineral interests are not the "subject of" the title transaction. Here, the primary purpose of the title transaction is the sale of surface rights. While the deed does mention the oil and gas reservations, the deed does not transfer those rights. In order for the mineral interest to be the "subject of" the title transaction the grantor must be conveying that interest or retaining that interest. Here, the mineral interest was not being conveyed or retained by Coffelt, the party that sold the property to appellants.

> Therefore, we disagree with the trial court's conclusion that oil and gas interests were the "subject of" the 2009 title transaction. Instead we specifically find that they were not the "subject of" the 2009 title transaction.

*Id.* at ¶¶48-49.

**{¶27}** Applying this court's reasoning, that in order for the mineral interest to be the "subject of" the title transaction the grantor must be conveying or retaining that interest, to the case at bar leads to the conclusion that the mere mention of the mineral interest reservation in the 1970 and 1977 deeds did not make the mineral interest "the subject of" the title transactions. Instead, "the subject of" those title

transactions was the conveyance of the surface estate. Thus, the 1970 and 1977 deeds were not savings events under either the 1989 version or the current version of R.C. 5301.56.

**{¶28}** Accordingly, appellant's first issue for review is without merit.

**{¶29}** Appellant's second issue for review asserts:

The trial court erred in applying the 1989 version of R.C. 5301.56 and not the current version of the statute.

**{¶30}** In this issue for review, appellant contends the trial court incorrectly applied the 1989 version of R.C. 5301.56 instead of the 2006 version.

**{¶31}** Firstly, appellant points to the general rule by the United States Supreme Court that a court should apply the law in effect at the time it renders its decision, even when that law was enacted after the events that gave rise to the lawsuit. Citing, *Landgraf v. USI Film Products*, 511 U.S. 244, 273, 114 S.Ct. 1483 (1994). Appellant points out that neither appellee nor his predecessors in interest sought to quiet title to the mineral rights between 1989 and 2006, when the 1989 version of the statute was in effect. When the complaint was filed in this case, appellant points out, the 2006 version of the statute had been in effect for approximately six years.

**{¶32}** Secondly, appellant asserts the trial court should have applied the 2006 version of the statute because it was the law in effect during the events that gave rise to this suit. She points out that appellee did not purchase the disputed property until 2009, three years after the 2006 version of the statute took effect. Therefore, appellant notes, appellee did not own the surface rights during the time the 1989 version of the statute was in effect.

**{¶33}** Thirdly, appellant argues that she must prevail under the 2006 version of the statute because Noon filed a timely preservation of mineral interest. She points out that R.C. 5301.56(E) now requires a surface owner to serve by certified mail to each holder of the mineral rights the surface owner's intent to declare the

mineral interest abandoned. She further notes the statute then provides that the owner of the mineral interest can file a claim to preserve the mineral interests within 60 days after the notice.

{¶34} Appellant asserts that appellee sent his notice of abandonment of mineral interest on November 27, 2011. Appellant states that Noon then filed a preservation of mineral interest on January 10, 2012, meeting the statutory requirements and preventing the interest from being divested.

{¶35} No Ohio appellate court or the Ohio Supreme Court has yet to address the issue of when to apply the 1989 version of R.C. 5301.56 and when to apply the 2006 version.

{¶36} The Ohio Revised Code offers some general guidance in examining this issue. "A statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48. The amendment or repeal of a statute does not affect the prior operation of the statute or affect "any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder." R.C. 1.58(A)(1)(2).

{¶37} There is no language in the 2006 version of R.C. 5301.56 to suggest that it is to be applied retroactively. Thus, it is only to apply prospectively. Additionally, although R.C. 5301.56 was amended in 2006, this amendment would not have affected any "validation, cure, right, privilege, obligation, or liability previously acquired."

{¶38} Under the terms of the 1989 version of R.C. 5301.56, any mineral interest held by anyone other than the surface owner "shall be deemed abandoned and vested" in the surface owner if none of the stated circumstances applied. Former R.C. 5301.56(B)(1). The stated circumstances were: (1) the mineral interest was in coal; (2) the mineral interest was held by the government; and (3) within the preceding 20 years, one or more of the stated events occurred, which included that the mineral interest has been the subject of a title transaction. Former R.C. 5301.56(B)(1). The 1989 version became effective on March 22, 1989. It further

provided that a mineral interest would not be deemed abandoned under division (B)(1) because none of the circumstances described in that division applied, until three years from the effective date of this section. Former R.C. 5301.56(B)(2). Thus, it provided a three-year grace period until March 22, 1992.

**{¶39}** Given the effective dates of the 1989 version of R.C. 5301.56, on March 22, 1992, Noon's mineral interest was "deemed abandoned and vested" in the surface owner at the time. As discussed in appellant's first issue for review, Noon's mineral interest was not the subject of any title transactions that would trigger the title transaction event. And appellant has not alleged any other savings events.

**{¶40}** The Ohio Supreme Court explained what it means for someone to have a "vested" interest in something in *State ex rel. Jordan v. Indus. Comm.*, 120 Ohio St.3d 412, 2008-Ohio-6137, 900 N.E.2d 150, ¶9:

> A "vested right" can "be created by common law or statute and is generally understood to be the power to lawfully do certain actions or possess certain things; in essence, it is a property right." *Washington Cty. Taxpayers Assn. v. Peppel* (1992), 78 Ohio App.3d 146, 155, 604 N.E.2d 181. It has been described as a right "which it is proper for the state to recognize and protect, and which an individual cannot be deprived of arbitrarily without injustice." *State v. Muqdady* (2000), 110 Ohio Misc.2d 51, 55, 744 N.E.2d 278. A vested right is one that " 'so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.' " *Harden v. Ohio Atty. Gen.*, 101 Ohio St.3d 137, 2004-Ohio-382, 802 N.E.2d 1112, ¶9, quoting Black's Law Dictionary (7th Ed.1999) 1324. A right also cannot be characterized as vested "unless it constitutes more than a 'mere expectation or interest based upon an anticipated continuance of existing laws.' " *Roberts v. Treasurer* (2001), 147 Ohio App.3d 403, 411, 770 N.E.2d 1085, quoting *In re Emery* (1978), 59 Ohio App.2d 7, 11, 13 O.O.3d 44, 391 N.E.2d 746.

**{¶41}** When the 2006 version of R.C. 5301.56 was enacted, Noon's mineral interest had already been abandoned and the mineral interest had been vested with the surface owner for 14 years. Once the mineral interest vested in the surface owner, it was reunited with the surface estate. Noon did not have any mineral interest in the subject property after March 22, 1992, because on that date the interest automatically vested in the surface owner by operation of the statute. And once the mineral interest vested in the surface owner, it "completely and definitely" belonged to the surface owner.

**{¶42}** Numerous trial courts in our District have likewise found that the 1989 version of R.C. 5301.56 applies to similar actions. See, *Walker v. Noon*, Noble County Common Pleas No. 2012-0098 ; *Marty v. Dennis*, Monroe County Common Pleas No. 2012-230; *Tribbett v. Shepherd*, Belmont County Common Pleas No. 12 CV 180.

**{¶43}** One trial court in our District has found to the contrary. *Dahlgren v. Brown Farm*, Carroll County 2013 CVH 274455. The trial court in *Dahlgren* found no merit to the "automatic vesting" theory. Instead, it classified the mineral rights under the 1989 version as "inchoate" rights. By definition, "inchoate" means "not completely formed or developed yet." Merriam-Webster Online Dictionary. This definition is in direct contrast to the definition of "vested" which means that something "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." *Jordan v. Indus. Comm.*, 120 Ohio St.3d at ¶9, quoting *Harden*, 101 Ohio St.3d at ¶9. Thus, the *Dahlgren* court's characterization of the mineral rights under the 1989 version is contrary to the statute itself, which states that the mineral rights are "vested."

**{¶44}** Additionally, trial courts in the Fifth District have likewise found that the 1989 version of the statute applies. See, *Wiseman v. Potts*, Morgan County Common Pleas No. 2008CV145 (where the parties agreed the 1989 version applied notwithstanding the fact it was filed after the 2006 version became effective); *Wendt v. Dickerson*, Tuscarawas County Common Pleas No. 2012 CV 02 0135 (prior

version of the statute applied because the landowner's rights had vested and could not be taken away).

**{¶45}** Further support for this finding is found in *Cadles of Grassy Meadows, II, LLC v. Kistner*, 6th Dist. No. L-09-1267, 2010-Ohio-2251. In *Kistner*, a judgment was entered in 1987 against the Kistners. The judgment was not fully satisfied and, pursuant to statute, the judgment became dormant on March 12, 1992. At the time the judgment became dormant, the prior version of R.C. 2325.18 (effective October 1, 1953, to June 1, 2004) was in effect and provided for a 21-year statute of limitations for revivor proceedings. In August 2009, Cadles moved the trial court to revive the judgment. The Kistners opposed the revivor arguing Cadles had abandoned its rights and because the statute of limitations barred revival. The trial court found that revival of the judgment was barred because the current version of R.C. 2325.18(A) provided for a 10-year statute of limitations for revival and more than 17 years had passed since the judgment became dormant. Cadles appealed.

**{¶46}** On appeal, Cadles argued the trial court erred in applying the current version of R.C. 2325.18 retroactively. It claimed the right to sue became a vested, substantial right at the time the judgment became dormant.

**{¶47}** The Sixth District examined an 1893 Ohio Supreme Court case dealing with the same issue. It noted that in *Bartol v. Eckert*, 50 Ohio St. 31, 33 N.E. 294 (1893), the Court held that without an expression of retroactivity, and based on the rule that amendments do not affect causes already existing, the amended statute was not applicable and the earlier statute applied. *Id*. at ¶14. It also stated that the *Bartol* Court considered the constitutionality of retroactively applying the statute and held that no vested right had been taken away or impaired by the statute. *Id*.

**{¶48}** The Sixth District noted that when determining whether a statute is to be applied retroactively the court must conduct a two-part inquiry. *Id*. at ¶15. First, there must be a clear, express legislative intent to apply the statute retroactively. *Id*. Then, if there is such an intent, the statute must affect only remedial, not substantive, rights or it will be found to violate Section 28, Article II of the Ohio Constitution. *Id*.,

citing *State ex rel. Romans v. Elder Beerman Stores Corp.*, 100 Ohio St.3d 165, 2003-Ohio-5363, 797 N.E.2d 82, ¶11.

**{¶49}** The court went on to point out that the current version of R.C. 2325.18 did not clearly provide for retroactive application. *Id.* at ¶17. It found, therefore, the statute was not intended to apply to dormant judgments that existed prior to the amendment of the statute. *Id.* Consequently, the court found that the prior version of the statute, which provided for a 21-year statute of limitations, controlled. *Id.*

**{¶50}** Although dealing with the application of a different statute, *Kistner* is helpful in that it found that the prior version of the statute applied, which was in effect at the time the judgment became dormant, as opposed to the current version of the statute, which was in effect when the revival claim was filed. And *Kistner* held that because the current version of the statute did not specifically provide for retroactive application, it did not apply to past judgments.

**{¶51}** Similarly, in the present case, the 2006 version of R.C. 5301.56 does not specifically provide for retroactive application. Thus, the 1989 version, which was in effect at the relevant time to render the mineral interest vested in the surface owner, controls here.

**{¶52}** Accordingly, appellant's second issue for review is without merit.

**{¶53}** Appellant's third issue for review asserts:

> As applied by the trial court, the 1989 version of the Dormant Minerals Act violates the Ohio Constitution's proscription on retroactive legislation.

**{¶54}** Appellant argues that the retroactive application of the 1989 version of the statute in this case is unconstitutional. She asserts that any reliance on *Texaco v. Short*, 454 U.S. 516, 102 S.Ct. 781 (1982), is misplaced. In *Texaco*, the United States Supreme Court upheld the constitutionality of Indiana's Dormant Mineral Interests Act. And Noon contends the application of the 1989 version of the statute violates Article II, Section 28 of the Ohio Constitution, which prohibits the General

Assembly from passing retroactive laws.

**{¶55}** Noon failed to raise these constitutional arguments in his complaint or in his motion for summary judgment in the trial court. In fact, Noon even argued in his summary judgment motion that under the 1989 version of R.C. 5301.56, his mineral rights were preserved by three title transactions.

**{¶56}** The Ohio Supreme Court has held that "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. However, the Ohio Supreme Court has also held that the waiver doctrine announced in *Awan* is discretionary. *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus. "Even where waiver is clear, [a reviewing court may] consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *Id.*

**{¶57}** But recognizing plain error in a civil case occurs only in extremely rare situations "involving exceptional circumstances" where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. In this case, we cannot conclude that the trial court committed plain error by failing to consider the constitutionality of the 1989 version of R.C. 5301.56 when neither party raised this argument. Not only did neither party raise this argument, but both parties argued how they would prevail under the 1989 version. Thus, we need not address appellant's constitutional argument.

**{¶58}** Accordingly, appellant's third issue for review is without merit.

**{¶59}** Based on the analysis of appellant's issues for review, both of her assignments of error are without merit. The trial court properly granted summary judgment in appellee's favor and denied appellant's motion for summary judgment.

**{¶60}** For the reasons stated above, the trial court's judgment is hereby

affirmed.

Vukovich, J., concurs.

Waite, J., concurs.