[Cite as *Dahlgren v. Brown Farm Properties L.L.C.*, 2014-Ohio-4001.]

STATE OF OHIO, CARROLL COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RONALD DAHLGREN, et al., | ) | |
| | ) | CASE NO.   13 CA 896 |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| BROWN FARM PROPERTIES | ) | |
| LLC, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
                                   Case No. 13CVH27445.

JUDGMENT:                          Reversed and Remanded.

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  September 9, 2014

[Cite as *Dahlgren v. Brown Farm Properties L.L.C.*, 2014-Ohio-4001.]

APPEARANCES:

For Plaintiffs-Appellees:               Attorney Eric Johnson
120 West Main Street
Canfield, Ohio  44406
(For the Dahlgren)


Attorney Clay Keller
Attorney Michael Altvater
One Cascade Plaza, Suite 1010
Akron, Ohio  44308
(For Chesapeake)



For Defendant-Appellant:            Attorney John Rambacher
Attorney Michael Kahlenberg
825 South Main Street
North Canton, Ohio  44720
(For Brown Farm Properties)


Attorney J. David Horning
400 South Douglas Highway
Gillette, Wyoming  82716
(For Thomas Beadnell)


Attorney Sean Smith
P.O. Box 252
Carrollton, Ohio  44615
(For Brian Wagner)

VUKOVICH, J.

{¶1} The defendant surface owners appeal the decision of the Carroll County Common Pleas Court which granted judgment to the Dahlgren family plaintiffs allowing them to maintain title to their severed mineral interests. The trial court denied the surface owners' assertion that the mineral interests had been abandoned and were automatically reunited with the surface under the 1989 Dormant Mineral Act. The court concluded that as no action was taken by the surface owners prior to the enactment of the 2006 version of the DMA, only the new version applied. Based upon prior holdings of this court, the trial court's decision is reversed, and the case is remanded for the entry of an order of abandonment.

STATEMENT OF THE CASE

{¶2} In 1949, Leora Perry Dahlgren sold over 225 acres in Carroll County. At that time, she severed the minerals and reserved them for herself. When she died in 1977, her children inherited her mineral interest. In 2009 and thereafter, the Dahlgren heirs started signing oil and gas leases, which are currently all held by Chesapeake Exploration LLC. In 2012, a notice of intent to declare mineral interests abandoned was sent by a landowner, and some Dahlgren heirs responded by filing claims to preserve the mineral interests. No affidavit of abandonment was then filed by the landowners. Due to the uncertainty, Chesapeake escrowed payments.

{¶3} In 2013, the Dahlgrens filed a declaratory judgment action against surface owners Brown Farm Properties LLC, Brian Wagner, and Thomas Beadnell. The three surface owners filed counterclaims asking the court to find the mineral interests abandoned and asserting that compliance with the 2006 DMA was not required due to the self-executing feature of the 1989 DMA. Chesapeake was named as a defendant but supported the claims of the mineral holders over the surface owners.

{¶4} On August 5, 2013, the parties filed a stipulation. The filing recited the stipulated facts, asked the court to decide the case on the briefs, and acknowledged that no trial was necessary. It was stipulated that the mineral interests were not the subject of any title transactions from March 22, 1969 through March 22, 1992, nor

any time thereafter until a lease was signed for part of the mineral interest in 2009. It was stipulated that no other savings event or condition existed during those times either.

**{¶5}** The stipulations concluded that if the oil and gas interests have as a matter of law been abandoned and vested in the surface owner by operation of former R.C. 5301.56, then the surface owners are the holders of the mineral interests, but if the oil and gas interests were not as a matter of law abandoned and vested in the surface owner by operation of former R.C. 5301.56, then the surface owners make no claim to the oil and gas underlying the realty. The parties then filed briefs in support of their respective requests for judgment.

**{¶6}** On November 13, 2013, the trial court ruled that the 2006 DMA controls and thus there was no abandonment. The court noted that the DMA is part of the Marketable Title Act, which states that 5301.47 to 5301.56 shall be liberally construed to effect the legislative purpose of simplifying and facilitating land transactions by allowing reliance on a record chain of title. *See* R.C. 5301.55. The court found that the surface owners' interpretation conflicts with this legislative purpose. The court also pointed out that forfeitures are not favored. The court expressed "doubt" about the constitutionality of the 1989 DMA as it did not specifically outline how to dispute the abandonment and opined that the 2006 amendments intended to resolve the issue of notice and opportunity to be heard.

**{¶7}** The trial court accepted the surface owners' argument that the 1989 DMA deemed rights abandoned if none of the statutory conditions existed within twenty years of March 22, 1989 with allowance for the three year grace period. However, the court found that at most, the lack of a statutory savings event created inchoate rights, essentially opining that the statute could not actually vest an ownership interest without judicial confirmation or opportunity for the mineral owner to contest the lack of a saving events. The court concluded that before a right could become more than inchoate, the 1989 DMA impliedly required implementation, such as by a recorded abandonment claim or court proceedings to confirm abandonment.

**{¶8}** The court added that absent implementation or enforcement of abandoned rights before the 2006 amendments, the surface owner lost the opportunity to proceed under the 1989 DMA and must now comply with the 2006 procedures. On this topic, the court found that existing procedures govern a court proceeding, opining that the changes were procedural ones that did not affect substantive rights. The surface owners filed a timely notice of appeal.

<u>DORMANT MINERAL ACT</u>

**{¶9}** The 1989 Dormant Mineral Act became effective on March 22, 1989 in R.C. 5301.56 as an addition to the Ohio Marketable Title Act, which is contained within R.C. 5301.47 through R.C. 5301.56. The 1989 DMA provides that a mineral interest held by one other than the surface owner "shall be deemed abandoned and vested in the owner of the surface" if no savings event occurred within the preceding twenty years. R.C. 5301.56(B)(1)(c) (unless the mineral interest is (a) in coal or (b) held by the government).

**{¶10}** The six savings events are as follows: (i) the mineral interest was the subject of a title transaction that has been filed or recorded in the recorder's office, (ii) there was actual production or withdrawal by the holder, (iii) the holder used the mineral interest for underground gas storage; (iv) a mining permit has been issued to the holder; (v) a claim to preserve the mineral interest was filed; or (vi) a separately listed tax parcel number was created. R.C. 5301.56(B)(1)(c)(i)-(vi).

**{¶11}** The statute provided the following grace period: "A mineral interest shall not be deemed abandoned under division (B)(1) of this section because none of the circumstances described in that division apply, until three years from the effective date of this section." R.C. 5301.56(B)(2). There were no obligations placed upon the surface owner prior to the statutory abandonment and vesting.

**{¶12}** On June 30, 2006, amendments to the DMA became effective. No grace period was provided. The language in division (B), "shall be deemed abandoned and vested in the owner of the surface," now operates only if none of the savings events apply **and** "if the requirements established in division (E) of this section are satisfied." R.C. 5301.56(B).

**{¶13}** "Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest," the surface owner shall provide a specific notice and file a timely affidavit of abandonment with the county recorder. R.C. 5301.56(E). *See also* R.C. 5301.56(E)(1) (notice by certified mail return receipt requested to each holder or each holder's successors or assignees, at the last known address, but if service of notice cannot be completed to any holder, then notice by publication), (E)(2) (affidavit of abandonment must be filed at least 30 but not later than 60 days after date notice is served or published), (F), (G) (specifying what the notice and affidavit must contain). In addition, the new twenty-year period for finding abandonment looks back from the date of this notice.

**{¶14}** The 2006 DMA also adds that that a mineral holder who claims an interest has not been abandoned may file with the recorder: (a) a claim to preserve or (b) an affidavit containing a savings event within 60 days after the notice of abandonment is served or published. R.C. 5301.56(H)(1). If no such timely document is recorded, then the surface owner "who is seeking to have the interest deemed abandoned and vested in the owner" shall file with the recorder a notice of the failure to file. R.C. 5301.56(H)(2) (was called memorialization; changed to "notice of failure to file" on January 31, 2014). "Immediately after" such recording, "the mineral interest shall vest in the owner of the surface * * *." *Id.*

<u>ASSIGNMENT OF ERROR NUMBER ONE</u>

**{¶15}** The appellant surface owners set forth two assignments of error, the first of which provides: "The trial court erred in retroactively applying the 2006 version of the Ohio Dormant Mineral Act to a mineral interest that was deemed automatically abandoned and vested in the Surface Owners, pursuant to a previous version of the Act."

**{¶16}** Appellants assert that the 1989 DMA contains an automatic, self-executing feature by stating that the mineral interest shall be deemed abandoned and vested in the owner of the surface if none of the savings conditions apply in the pertinent time period. They argue that the 2006 DMA was not expressly made retrospective and thus its new procedures and rights should be applied only

prospectively without erasing previous mineral interests that automatically vested in the surface owner, citing R.C. 1.48. Appellants point out that a reenactment, amendment, or repeal does not affect the prior operation of a statute or any right, privilege, or obligation previously acquired, accrued, accorded, or incurred under the prior statute, citing R.C. 1.58.

{¶17} It is urged that the trial court erred in creating an affirmative duty on the part of the surface owner where the statute contains no such duty. Appellants conclude that a court cannot imply that certain acts must be done in order for a surface owner to maintain vested rights under a statute and that if such acts are not done by the time a new statute is enacted, then the surface owner loses the ability to proceed to have their previously vested rights declared by a court.

{¶18} Appellees respond that the mere fact of a look-back period shows that the DMA was intended to apply retrospectively. They insist that the 2006 amendments deal only with procedural and remedial matters and do not affect substantive rights, urging that a surface owner still has a right to recapture the minerals under the 2006 act but must follow various new procedures in order to do so. They contend that the only right given to the surface owners under the 1989 DMA was the potential for abandonment and vesting, which potential still exists after the 2006 amendments. Appellees agree with the trial court's position that any right was inchoate and conclude that the 1989 DMA was not automatic or self-executing because such words were not contained in the statute.

{¶19} Appellees state that there was no prior operation of a statute under R.C. 1.58 because no judicial action or official act was instituted under that statute while it existed. It is also suggested that the twenty-year period in the 1989 DMA be read looking back twenty years from the date of a court action, concluding that if one does not file an action during the existence of the act, there can be no action filed under the act. Appellees note that we did not discuss the 1989 DMA and applied only the 2006 DMA in *Dodd*. They assert that the word "deemed" merely created a rebuttable presumption and refer to the legislative intent stated in R.C. 5301.55 that

the statutes shall be liberally construed to simplify and facilitate land transactions by allowing reliance on the record chain of title.

**{¶20}** The statement in the MTA, that the statutes are to be liberally construed to facilitate and simplify land transactions by allowing reliance on the record chain of title, does not mandate a holding that the 1989 DMA can no longer be utilized after the 2006 amendment. As they state that the 1989 DMA could have been utilized prior to the 2006 DMA, until that point and prior to official confirmation, the title records on an abandoned mineral interest would have been just as unclear then as they are said to be now. In other words, if there was not an irreconcilable conflict during the time of the 1989 DMA,[1] we cannot say such conflict is created as to a prior statute due to the mere enactment of a new version.

**{¶21}** In any event, this was merely a consideration proposed to support the trial court's decision and was not the ultimate ruling by the trial court. As to our *Dodd* case, this was our first encounter with the DMA, and those parties only presented arguments concerning the 2006 DMA and did not present arguments to this court under the 1989 DMA. *See Dodd v. Croskey*, 7th Dist. No. 12HA6, 2013-Ohio-4257. We have thus instructed that the lack of reference to the 1989 DMA in *Dodd* is not dispositive as to whether the 1989 DMA can still be used to assert vested rights. *See Swartz v. Householder,* 7th Dist. Nos. 13JE24, 13JE25, 2014-Ohio-2359, ¶ 17 (if parties do not invoke a statute, we proceed under the impression that the parties agreed that said statute was not dispositive, e.g. if parties were to agree that there was no abandonment under the 1989 DMA, then they would proceed under only the 2006 DMA, and we would accept that position).

---

[1]In *Swartz*, we addressed a suggestion that the 1989 DMA was invalid because it wholly conflicted with the purpose of the MTA. We pointed out that R.C. 1.51 states that if a general provision conflicts with a special provision, they shall be construed if possible by giving effect to both, and if the conflict is irreconcilable, the special prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail. *Swartz*, 7th Dist. Nos. 13JE24, 13JE25 at ¶ 20, citing *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 26-33. We then stated that the DMA is more specific, it was enacted later, and the legislative intent is clearly to reattach mineral interests back to the surface under a twenty-year look back. *Id.*

**{¶22}** In both *Swartz* and *Walker*, this court ruled on the issue of whether the 1989 DMA can still be used to declare mineral interests abandoned thereunder. In *Walker*, we first concluded that the 1989 DMA can still be used after the 2006 amendments because the prior statute was self-executing and the lapsed right automatically vested in the surface owner. *See Walker v. Shondrick-Nau*, 7th Dist. No. 13NO402, 2014-Ohio-1499 (fka *Walker v. Noon*). In *Swartz*, this court maintained the *Walker* holding and reiterated its rationale. In fact, arguments were made to this court in those appeals as to whether this court should adopt the trial court's holding in the very case before us now, and we declined to do so.

**{¶23}** We opined that the 1989 DMA is the type of statute characterized by automatic lapsing and reversion to the surface owner known as a self-executing statute due to the language "shall be deemed abandoned and vested in the owner of the surface if none of the statutory conditions exist." *Swartz*, 7th Dist. Nos. 13JE24, 13JE25 at ¶ 27, citing *Walker* and *Texaco*, 454 U.S. 516 (Indiana's DMA was self-executing as it provided the mineral interest shall be extinguished and ownership shall revert upon the non-occurrence of savings events within the pertinent time period).

**{¶24}** This court reviewed R.C. 1.48 and R.C. 1.58 in *Walker* and *Swartz*. Pursuant to R.C. 1.58(A), the reenactment, amendment, or repeal of a statute does not affect the prior operation of the statute or any prior action taken thereunder. R.C. 1.58(A)(1). In addition, the reenactment, amendment, or repeal of a statute does not affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder. R.C. 1.58(A)(2). And, the reenactment, amendment, or repeal of a statute does not affect any proceeding or remedy in respect of any such privilege, obligation, or liability and the proceeding or remedy may be instituted, continued, or enforced as if the statute had not been repealed or amended. R.C. 1.58(A)(4).

**{¶25}** Pursuant to R.C. 1.48, "[a] statute is presumed prospective in its application unless expressly made retrospective." In accordance, a statute must "specifically indicate" that it applies retroactively or it will be implemented as applying

only prospectively. *See, e.g., State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 15 (to overcome the presumption that it applies only prospectively, the legislature must "clearly proclaim" the retroactive application); *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, fn. 2 (not retroactive because legislature did not specify that statute applied retrospectively and no indication that law was clarification as opposed to modification); *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 40 (if a statute is silent on intent to apply retrospectively, then it applies only prospectively); *Bartol v. Eckert*, 50 Ohio St.31, 33 N.E. 294 (1893).

**{¶26}** We concluded that the statute to be applied is the one existing at the time the cause of action accrued unless the new statute existing at the time the suit was filed enunciates that it applies to causes of action that accrued prior to the effective date. *Swartz*, 7th Dist. Nos. 13JE24, 13JE25 at ¶ 29, citing the above cases and adding *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 179, 183 (where new statute clearly said that it applied to suits filed after its effective date, it had retroactive application to injuries that occurred prior to enactment). *See also Walker*, 7th Dist. No. 13NO402 at ¶45-50, reviewing *Cadles of Grassy Meadows, II, LLC v. Kistner*, 6th Dist. No. L-09-1267, 2010-Ohio-2251, ¶17 (a new statute of limitations for revivor of judgments, which shortened the time for such action, did not apply to judgments that became dormant prior to enactment where that new statute of limitations contained no clear expression of retrospective application, even though the statute was enacted before the revivor action was filed).

**{¶27}** This court stated that a vested interest can be a property right created by statute; a vested interest so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent. *See Walker,* 7th Dist. No. 13NO402 at ¶ 40, quoting *State ex rel. Jordan v. Industrial Comm.*, 120 Ohio St.3d 412, 2008-Ohio-6137, 900 N.E.2d 150, ¶ 9; *Swartz*, 7th Dist. Nos. 13JE24, 13JE25 at ¶ 29. The 1989 DMA, with its three-year grace period, specifies that the mineral interest is deemed abandoned and the surface owner obtains a

vested right if any of the listed circumstances apply, none of which are disputed on appeal here. *See* Former R.C. 5301.56(B)(1).

**{¶28}** The 2006 DMA deals with rights that have not yet been deemed abandoned and vested as it states, "Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface subject to the interest shall do both of the following * * *." *See Swartz*, 7th Dist. Nos. 13JE24, 13JE25 at ¶ 35, citing R.C. 5301.56(E). The current DMA thus eliminated automatic vesting after June 30, 2006 (imposing new enforcement obligations on the surface owner and redrawing the savings event timeline).

**{¶29}** But, this does not mean that it erased interests that were previously deemed vested (merely because a suit had not yet been filed to formalize the reverter). *Id.* The most pertinent definition of the word "deem" here would be: "to treat [a thing] as being something that it is not, or as possessing certain qualities that it does not possess. It is a formal word often used in legislation to create legal fictions * * *." Garner, *The Dictionary of Modern Legal Usage*, 254 (2d Ed.1995).

**{¶30}** The conclusion made was that when the 2006 version was enacted, any mineral interest that was treated as abandoned under the 1989 version stayed abandoned and continued to be vested in the surface owner, and once the mineral interest vested in the surface owner, it reunited with the surface estate pursuant to statute regardless of whether the event had yet to be formalized. *See Swartz*, 7th Dist. Nos. 13JE24, 13JE25 at ¶ 34, citing *Walker*, 7th Dist. No. 13NO402 at ¶ 41. It was pointed out that the 2006 DMA contains no language eliminating property rights that were previously expressly said to be vested, i.e. it contains no statement that its new requirements for surface owners and the new rights for mineral holders apply retrospectively. *See Swartz*, 7th Dist. Nos. 13JE24, 13JE25 at ¶ 34, citing *Walker*, 7th Dist. No. 13NO402 at ¶ 51. It was therefore decided that absent express language eliminating the prior automatic abandonment and vesting of rights under the old act, the amendments do not affect causes already existing (regardless of whether a suit is filed before or after the amendments). *See id.*

**{¶31}** We explained that a look-back period (which already existed under the old statute) did not expressly or even implicitly make a statute retroactive. *Id.* at fn. 2. The notice of abandonment is the new trigger for the look-back, which item can only apply prospectively because one could not file a notice of abandonment with the 2006 DMA statutory effects and triggers before it was even created. In other words, the new DMA instituted *a new look-back initiator* (the notice of abandonment) to be employed prospectively in the future. *Id.* It was expressed in *Swartz*:

> To some, the result reached by the trial court in *Dahlgren* may seem fair, equitable, and practical under a theory that it is the initial forfeiture that should be abhorred by the law rather than the later forfeiture of a property right obtained by forfeiture in the first place. However, legislatures around the country found such initial abandonment and unification with the surface to be important to the state, and the United States Supreme Court agreed that the state has such legitimate interests.
>
> "It is as if *Dahlgren* construed the amendments to be a type of implied statute of limitations for asserting rights granted under the 1989 DMA. Essentially, *Dahlgren* found that a vested right was eliminated by a non-retrospective statutory amendment (an amendment with no grace period unlike the 1989 DMA). *Dahlgren* concluded that the lack of savings events at most created an inchoate right because judicial action would be required in order to officially transfer ownership on the records (or a recording of a disputed title so the mineral owner could contest the dispute).
>
> "Yet, the terms "inchoate" and "vested" are generally opposites. *See, e.g., Bauman v. Hogue*, 160 Ohio St. 296, 301, 116 N.E.2d 439 (1953); *Walker*, 7th Dist. No. 13NO402 at ¶ 43. An inchoate right is a right that *has not fully* developed, matured, *or vested*. Black's Law Dictionary (9th Ed.2009) (online). We conclude that it is contrary to the plain language of the statute to hold that the surface owner's right to the

abandoned mineral interests are inchoate even though the statute expressly stated that the right vested upon the lack of a savings event within the pertinent time period. Finally, we note that *Dahlgren* expressed concern about the opportunity to contest abandonment without recognizing that the very suit before it was the opportunity to so contest (that there were savings events in the pertinent time period).

"As we held in *Walker*, the 1989 DMA can still be utilized for mineral interests that were deemed vested thereunder * * *."

*Swartz*, 7th Dist. Nos. 13JE24, 13JE25 at ¶ 36-39. *See also Walker*, 7th Dist. No. 13NO402, ¶ 43 ("the *Dahlgren* court's characterization of the mineral rights under the 1989 version is contrary to the statute itself, which stated that the mineral rights are 'vested.' ").

**{¶32}** We also expressed that the 1989 DMA need not be seen as incomplete for failing to mention specific implementation provisions. *Swartz,* 7th Dist. Nos. 13JE24, 13JE25 at ¶ 22. A court action, such as for declaratory judgment or quiet title to formalize the statutory vesting, already legally existed as a matter of course, and a statute need not explain to the reader how they can file a court action to have their vested rights formally declared. *Id. See also Texaco v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (which emphasized the difference between the self-executing feature of a dormant mineral act and a subsequent judicial determination that a lapse did occur).

**{¶33}** As we have specifically ruled that the 1989 DMA can still be used to declare mineral interests abandoned, we resort to stare decisis as governing here. This assignment of error is sustained.

### ASSIGNMENT OF ERROR NUMBER TWO

**{¶34}** As a second assignment of error, the landowners posit: "The trial court erred in finding application of the Former Act violative of Due Process."

**{¶35}** Here, the surface owners wish to preemptively contest any suggestion that the 1989 DMA deprived the mineral holders of an opportunity to dispute the claims, apparently in case the mineral holders raised a cross-assignment. The

surface owners point out that the 1989 DMA provided a three-year grace period during which mineral holders could file a claim to preserve and avoid abandonment. They also state that mineral holders can always file a declaratory judgment or quiet title action, noting that this was the remedy chosen by the Dahlgrens here. They note that the Dahlgrens' inability to prove a savings event because one did not occur has no relation to due process.

{¶36} The Dahlgrens respond to this assignment with suggestions as to unconstitutionality of the 1989 DMA. However, we refuse to render a decision on constitutionality here. As Chesapeake (the Dahlgrens' fellow appellee) points out, the trial court mentioned some constitutional concerns in dicta, but the court refrained from ruling on those issues. This issue assigned by the surface owners as potential error need not be addressed because the trial court did not actually declare that the 1989 DMA was unconstitutional.

{¶37} The trial court's decision is based upon its conclusion that the 1989 Act impliedly requires implementation before it finally settled rights and that absent implementation by the surface owner (by court action or recordation of a document in the recorder's office) prior to the 2006 amendments, the 2006 amendments govern. In explaining what appear to be various policy reasons in support of its conclusion, the court stated that it "doubts" statutory abandonment would be constitutionally enforceable without giving the mineral holder "the opportunity to dispute the relevant claims." The trial court noted the *Texaco* statement regarding due process prior to judgment in a quiet title action and concluded that without notice and an opportunity to be heard, statutory abandonment may violate Art. I, Sec. 19 of Ohio's Constitution. The trial court then *declared that it need not determine that issue* where other considerations reach the same result.

{¶38} The court generally stated that due process mandates notice and opportunity to respond before a dispute about statutory rights can be resolved and mentioned that statutes should be construed in the manner that best confirms their constitutionality. The court then accepted for purposes of its decision that the 1989 DMA deemed the minerals abandoned if none of the statutory conditions existed

within twenty years of March 22, 1989 (or in the three years thereafter). The court concluded that the 1989 DMA created at most an inchoate right and did not transfer ownership without judicial confirmation or other opportunity to contest a claim that there were no relevant savings events. The court added that the 2006 amendments were mere procedural changes and that current procedures governing the dispute must be applied.

**{¶39}** The trial court's due process expressions challenged by appellants are mere observational concerns and dicta rather than rulings invalidating the 1989 DMA on constitutional grounds. The court's essential holding was that the 1989 DMA could no longer be applied after the 2006 amendments.

**{¶40}** In *Swartz*, we mentioned that a statute could not be challenged as unconstitutional in a declaratory judgment action without notification to the attorney general of the constitutional challenge. *See Swartz*, 7th Dist. Nos. 13JE24, 13JE25 at ¶ 36, citing R.C. 2721.12 (if any statute * * * is alleged to be unconstitutional, the attorney general also shall be served with a copy of the complaint in the action or proceeding and shall be heard."); *Cicco v. Stockmaster*, 89 Ohio St.3d 95, 98-100, 728 N.E.2d 1066 (2000) (reiterating that this requirement is jurisdictional and finding a problem even where the attorney general was given copy of the summary judgment motion where constitutionality was first raised); *Malloy v. Westlake*, 52 Ohio St.2d 103, 105-107, 370 N.E.2d 457 (1977). This was a declaratory judgment action by the Dahlgrens.

**{¶41}** Importantly, they did not seek in their complaint to have the 1989 DMA ruled unconstitutional as a violation of due process. In fact, their last filing in the trial court *specified that they do not challenge the constitutionality of the DMA*. (Nov. 1, 2013 Response to Defendant's Request for Judgment). In *Walker* and *Shannon*, we refused to address the matter of whether the 1989 DMA was constitutional where said issue was not properly preserved below. Moreover, the stipulations here concluded that if the oil and gas interests have as a matter of law been abandoned and vested in the surface owner by operation of former R.C. 5301.56, then the defendant landowners are the owners and holders of the mineral interests, but if the

oil and gas interests were not a matter of law abandoned and vested in the surface owner by operation of former R.C 5301.56, then the defendant landowners make no claim to the oil and gas interest underlying their respective real properties.

**{¶42}** In sum, we have the appellee-Dahlgrens' response below admitting that they did not challenge the constitutionality of the DMA, the concluding stipulations framing the issue the court was asked to address, the current argument of appellee-Chesapeake that there was no ruling by the trial court on constitutionality and thus there is nothing for us to review (which appellants would not contest), the requirement to notify the attorney general of an action to declare a statute unconstitutional, the trial court's mere dubitative language in dicta that it "doubts" the statute would be considered constitutional, and the trial court's overriding conclusion that the 1989 DMA can no longer be applied after the 2006 amendments. Considering all of this, this assignment of error need not be addressed as the trial court was not asked to and did not declare that the 1989 DMA was unconstitutional.

**{¶43}** In conclusion, the judgment of the trial court is reversed, and the case is remanded for the entry of an order of abandonment.

Donofrio, J., concurs.
Waite, J., concurs.