[Cite as *Tribett v. Shepherd*, 2014-Ohio-4320.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| VERNON TRIBETT, et al., | ) | |
| | ) | CASE NO.    13 BE 22 |
| PLAINTIFFS-APPELLEES/ | ) | |
| CROSS-APPELLANTS, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| BARBARA SHEPHERD, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS/ | ) | |
| CROSS-APPELLEES. | ) | |


CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court, Case No. 12CV180.


JUDGMENT:                              Affirmed.


APPEARANCES:
For Plaintiffs-Appellees/              Attorney Richard Myser
Cross-Appellants:                      320 Howard Street
                                       Bridgeport, Ohio  43912


For Defendants-Appellants/             Attorney Matthew Warnock
Cross-Appellees:                       Attorney Daniel Gerken
                                       100 South Third Street
                                       Columbus, Ohio  43215-4291


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


Dated:  September 29, 2014

VUKOVICH, J.

{¶1} Defendants-appellants Barbara Shepherd, Marion Shepherd, as executor of the Estate of Joseph Shepherd, David Shepherd, Scott Whitacre, Susan Spenser, Steve Whitacre, Samuel Whitacre, Ralph Earliwine, James Earliwine, Rhonda Earliwine, Donley Williams, Mary Taylor, Cathy Jo Yontz, Carol Talley, Karen Stubbs, Pamela Skelly, David Huisman, Debbie Allen, Mark Phillips, Brian Phillips, Liana Phillips Yoder, Sallie Shepherd, John Mauersberger, George Mauersberger, Gwen Lewis, Wayne Shepherd, Brent Moser, Barrett Moser and Kaye Anderson Hall (collectively referred to as Shepherds) appeal the decision of the Belmont County Common Pleas Court granting summary judgment in part for Vernon Tribett and Susan Tribett (Tribetts). The Tribetts have cross appealed. They are appealing from the decision of the Belmont County Common Pleas Court that granted the Shepherds motion for summary judgment in part.

{¶2} Multiple issues are raised in the appeal and cross appeal, most of which have recently decided in other decisions by this court. The issues that have not been decided are whether the 1989 version of Ohio Dormant Mineral Act (ODMA) is barred by the statute of limitations and whether the 1989 version of the ODMA is unconstitutional. We find that the 1989 version of the ODMA is not barred by the statute of limitations and that that version is constitutional. Based on those rulings, our prior decisions and the reasons expressed below, the judgment of the trial court is hereby affirmed.

<u>Statement of the Facts and Case</u>

{¶3} In 1959, Joseph Shepherd, John Shepherd and Keith Shepherd inherited a tract of land in Union Township, Belmont County, Ohio. Included in this tract of land is the 61 acres that are at issue in this appeal. In 1962, Joseph Shepherd, John Shepherd and Keith Shepherd sold the surface rights and coal interests they still had in roughly 137 acres to Seaway Coal. Those individuals, however, reserved all other mineral interests. Included in those 137 acres is the 61 acres at issue in this case. The reservation reads:

Excepting and reserving unto the said Grantors, their heirs and assigns, all oil and gas lying under and within the premises hereby conveyed, with the right to enter on said premises, prospect, explore and drill for, develop, produce, store and remove the same, with all machinery, structures, derricks, tanks, pipe lines, equipment, fixtures, machinery and other appliances and things necessary or convenient therefor, and the right to use so much of the surface as may be necessary for the purposes aforesaid. However, said Grantors agree not to interfere with the prosecution of the mining operations of said Grantee, in the drilling and exploring for said gas and oil.

1962 Deed.

{¶4} In 1986, Seaway Coal sold all of the interest in the land to Shell Mining Company. That 1986 deed contains the reservation of mineral interests to Joseph Shepherd, John Shepherd, and Keith Shepherd that was contained in the 1962 deed.

{¶5} In November 1992, Shelling Mining sold all interest in the land to R&F Coal by limited warranty deed. This 1992 deed also contains the 1962 reservation of mineral interests. R&F Coal eventually sold the surface. In 1996 and 2006, the Tribetts acquired a total of 61 acres from the original 137 acres that was sold by Joseph Shepherd, John Shepherd and Keith Shepherd to Seaway Coal.

{¶6} On September 29, 2011, the Tribetts published a notice of abandonment of mineral interest in the Times Leader, a local Belmont County newspaper. They did not attempt service. On October 28, 2011, the Shepherds filed an affidavit to preserve the mineral interests that they allegedly inherited from Joseph Shepherd, John Shepherd and Keith Shepherd. On April 16, 2012, the Tribetts filed an action for Quiet Title and Declaratory Judgment.

{¶7} At the outset, there were some joinder issues which are not at issue in this appeal and thus, will not be discussed to further extent. The case then proceeded to the merits. Each party filed their own sets of summary judgment motions and opposition motions.

{¶8} In their motion for summary judgment, the Tribetts argued that under both the 1989 and 2006 version of the ODMA, they were entitled to have the mineral interests deemed abandoned. They contended that there was no savings event that made the mineral interests not abandoned.

{¶9} The Shepherds, on the other hand, argued that the mineral interests were not abandoned. They contended that the 2006 version of the statute is applicable, not the 1989 version. Along this same vein, they argued that the 1989 version constitutes an unconstitutional taking because allegedly this statute indicates that unless a savings event occurs within the 20 year look-back period, the mineral interest is deemed abandoned and vested in the owner of the surface. Alternatively the Shepherds also argued that there were two savings events that occurred, the 1986 Shell Mining Deed and the 1992 R&F Coal Deed. Therefore, they also claimed that under either statute the minerals were not abandoned. Specifically as to the 2006 version of the ODMA, they claimed that the Tribetts did not comply with the notice provisions in the statute and thus the Tribetts could not prevail under that statute. They argued that the notice provision in the 2006 version required that they, as holders of the minerals, be served by certified mail of the attempt to have the minerals deemed abandoned. The Tribetts did not attempt certified mail, rather they did service through publication.

{¶10} In response to this motion, the Tribetts asserted that the 1989 version of the ODMA is not unconstitutional and that it is applicable. They also argued that neither the 1986 or 1992 deeds were savings events under the language of either statute. They contended that the Shepherds were not holders of the mineral interest and thus, they did not have to serve them by certified mail; they asserted publication was sufficient.

{¶11} Following the arguments, the trial court granted summary judgment in part for each party. The trial court specifically held that both versions of the ODMA were applicable. It found that the 1989 act was constitutional based on the United States Supreme Court's decision in *Texaco Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781 (1982). It found that the ODMA is part of the Ohio Marketable Title Act, but requires a

higher standard for a savings event and that neither the 1986 nor 1992 deeds were savings events because the mineral interests were not subject of the title transaction.

{¶12} That said, it found that the Tribetts did not properly invoke the 2006 version because the Shepherds were holders and by statute they were required to be given notice of the owners intent to pursue abandonment. This notice was required to be done by certified mail. The Tribetts made no attempt at certified mail but rather went straight to publication notice, which is an alternative if certified mail cannot be completed. Therefore, the trial court found that the Tribetts could not rely on the 2006 version to pursue their abandonment claim.

{¶13} As to the 1989 version of the ODMA, it once again discussed the 1986 and 1992 deeds. It found that under the 1989 version, the look-back period is a 20 year fixed period. It explained that "there is a 20 year look-back period from March 22, 1989 during which the 'Savings Event' must have occurred plus a 3 year grace period to March 22, 1992. Thus, it looked from March 22, 1969 to March 22, 1992 and indicated that the only potential savings event would be the 1986 deed. However, it indicated that that deed was not an actual savings event because of its previous determination that the mineral interest was merely recited in the deed and was not the subject of the title transaction. Thus, the trial court concluded that the mineral interests vested in the surface owners on March 22, 1992. The court then quieted title in the mineral interests to the Tribetts. The grant of summary judgment in part for each party was appealed to this court.

### Shepherds First and Second Assignments of Error

{¶14} "The trial court erred in granting summary judgment for Plaintiffs-Appellants."

{¶15} "The trial court erred in not granting summary judgment in favor of Defendants-Appellants."

{¶16} The appellate brief combines the two arguments. The essence of the Shepherd's position is that there are no factual disputes and as a matter of law summary judgment should have been granted for them, not for the Tribetts.

{¶17} In reviewing a summary judgment award we apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.,* 128 Ohio App.3d 546, 552, 715

N.E.2d 1179 (7th Dist.1998). Thus, we use the same test the trial court did, Civ.R. 56(C). That rule provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Fleming,* 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994).

{¶18} This appeal involves the Ohio Dormant Mineral Act (ODMA). This act provides a mechanism for deeming mineral interests abandoned and having them reattached to the surface. Multiple issues are raised in this appeal concerning the trial court's application of the ODMA. Each ruling will be addressed in turn.

<u>1. "Subject of" the Title Transaction</u>

{¶19} The Shepherds argued below and argue on appeal that the 1992 R&F deed and the 1986 Shell Mining deed is a title transaction within the meaning of the ODMA and thus, provides that the mineral interests were not abandoned. The trial court disagreed and indicated that although the deeds do contain the language that specifically identifies the oil and gas interests previously excepted in the 1962 Shepherd deed, the oil and gas exception is not the subject of the 1992 or 1986 deeds. "The mere reference to the oil and gas exceptions simply clarify that which is being transferred." 08/05/13 J.E. Thus, the trial court found that the 1992 and 1986 deeds were not savings events.

{¶20} The ODMA provides:

(B) Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied and none of the following applies:

* * *

(3) Within the twenty years immediately preceding the date on which notice is served or published under division (E) of this section, one or more of the following has occurred:

(a) The mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located.

R.C. 5301.56(B)(3)(a) (current version) (this provision in 1989 version is almost identical).

{¶21} As aforementioned, the 1992 and 1986 deeds transferred the surface and any coal interests that the previous party had acquired. Those deeds regurgitated the original oil and gas reservation that was in the 1962 deed which transferred 137 acres and coal interest in that land from Joseph Shepherd, John Shepherd and Keith Shepherd to Seaway Coal. The 1962 deed specifically indicated that Joseph Shepherd, John Shepherd and Keith Shepherd and their heirs or assigns retained the oil and gas interests in the 137 acres.

{¶22} As can be seen, these deeds are primarily for the conveyance of the surface and any coal interests that the other party still had. As the trial court aptly stated, the mere reference to the oil and gas exception was simply to clarify what was being transferred. Or in other words, the restatement of the reservation was not the primary purpose of these deeds. We have previously stated a subsequent conveyance of surface rights in which the mineral interest reservation was simply restatement is not a savings event under the ODMA. *Dodd v. Croskey*, 7th Dist. No. 12HA6, 2013-Ohio-4257, ¶ 48 (discretionary appeal accepted by the Ohio Supreme Court on a different issue, cross-appeal on this issue not accepted, 2013-Ohio-1730); *Walker v. Shodrick-Nau*, 7th Dist. No. 13NO402, 2014-Ohio-1499, ¶ 25-28.

Other than *Riddel*, there is no case law in Ohio discussing what "subject of a title transaction" means. Furthermore, "subject of" is not defined in the statute. Therefore, the phrase must be given its plain, common, ordinary meaning and is to be construed "according to the rules of grammar and common usage." *Smith v. Landfair,* 135 Ohio St.3d 89, 2012–Ohio–5692, 984 N.E.2d 1016, ¶ 18. The common definition of the word "subject" is topic of interest, primary theme or basis for action. Webster's II New Riverside University Dictionary 1153 (1984). Under this definition the mineral interests are not the "subject of" the title

transaction. Here, the primary purpose of the title transaction is the sale of surface rights. While the deed does mention the oil and gas reservations, the deed does not transfer those rights. In order for the mineral interest to be the "subject of" the title transaction the grantor must be conveying that interest or retaining that interest. Here, the mineral interest was not being conveyed or retained by Coffelt, the party that sold the property to appellants.

*Id.*

**{¶23}** The Shepherds argue that our decision is incorrect. They contend that our focus was misplaced. We focused on the "subject of" language. Instead, they contend that the focus should be on the definition of title transaction, which is "any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decrees of any court as well as warranty deed, quit claim deed, or mortgage." R.C. 5301.47(F). Specifically, they would like the focus to be on "any interest in land." According to them, "any interest in the land" would be mineral interests and therefore, any deed that recites the previous reservation is sufficient to deem the interest not abandoned.

**{¶24}** The Shepherds are correct in their definition of a title transaction. It is acknowledged that a title transaction affects any interest in land. However, the words of the statute additionally required the mineral interest to be "subject of the title transaction." If the words "subject of" were omitted from the statute, the Shepherds would probably be correct that a deed reciting a prior reservation would be sufficient to prevent abandonment. However, those words are in the statute and must be given effect.

**{¶25}** The Shepherds also ask us to look at the legislative history of the ODMA. In enacting the 2006 version, the language first introduced was not "The mineral interest has been the subject of a title transaction." Rather, it was the "interest has been conveyed, leased, transferred or mortgaged by an instrument filed or recorded in the recorder's office of the county in which the lands are located." They contend that since that language was removed that means that an actual conveyance or transfer is

not necessary. Thus, they assert that subject of title transaction is broader and provides for the situation, such as the one here, where a reservation is simply restated in the deed.

{¶26} This same argument was presented in *Walker* and was summarily deemed meritless based on the *Dodd* decision. *Walker* at ¶ 24. While the subject of title transaction is probably broader than the language in the proposed statute, the phrase "subject of the title transaction" is still more limited than simply being part of the title transaction. The language of the statute, specifically "subject of," still must be given meaning. Other words could have been used to give the meaning that a recitation of a previous reservation was sufficient to be a savings event for purposes of abandonment, however they were not.

{¶27} Thus, despite their argument to the contrary, we stand by our decisions in *Dodd* and *Walker*. The Shepherds argument about "subject of" is meritless.

### 2. ODMA vs. Ohio Marketable Title Act (OMTA)

{¶28} The Shepherds also argued below and also on appeal that the ODMA is a part of the OMTA and is the subject of the restrictions of R.C. 5301.49(A), which states that a record marketable title is subject to "all interests and defects which are inherent in the muniments of which such chain of record title is formed." Thus, the Shepherds asserted that the 1986 Shell Mining Deed and the 1992 R&F Coal Deed, which specifically identified the severed mineral interest, complies with that restriction. As such, it seems that they are asserting that those deeds are savings events to abandonment.

{¶29} This argument appears to be an attempt to get around the words "subject of" that are specifically used in the ODMA. As explained above, the use of the words "subject of" mean that the 1986 and 1992 deeds do not constitute savings events under the ODMA.

{¶30} The trial court did not find any merit with the Shepherds OMTA argument:

> The Ohio Dormant Mineral Act is part of the Ohio Marketable Title
> Act. The specific language required by the Dormant Mineral Act controls
> over the general language of the Marketable Title Act. The Dormant

Mineral Act requires a higher test for a "Savings Event" than does the language of the Marketable Title Act. This Court does not find the mere filing, of the 1986 Shell Mining Deed or the 1992 R&F Coal Deed within the muniments of title, to be controlling.

08/05/13 J.E.

**{¶31}** As discussed above, the ODMA provides in layman's terms that a mineral is not abandoned if within 20 years a savings event occurred. One such savings event is that the mineral interest has been the subject of a title transaction that has been filed or recorded. R.C. 5301.56(B).

**{¶32}** The OMTA provides:

Such record marketable title shall be subject to:

(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest; and provided that possibilities of reverter, and rights of entry or powers of termination for breach of condition subsequent, which interests are inherent in the muniments of which such chain of record title is formed and which have existed for forty years or more, shall be preserved and kept effective only in the manner provided in section 5301.51 of the Revised Code.

R.C. 5301.49(A).

**{¶33}** As can be seen, there are differences between the two statutes. For instance, the ODMA provides for a 20 year period, while the Ohio Marketable Title Act is for a 40 year period. Likewise, the words "subject of" are used in the ODMA to modify the title transaction. Such words as modifiers are not used in the Ohio Marketable Title Act.

{¶34} Furthermore, recently we have explained that the ODMA is a specific statute as to minerals and the OMTA is a general statute. *Swartz v. Householder*, 7th Dist. Nos. 13JE24, 13JE25, 2014-Ohio-2359, ¶ 19-20.

{¶35} R.C. 1.51 provides:

If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

{¶36} The ODMA is a specific statute as to minerals and to determine if they are abandoned. In comparison, R.C. 5301.49 is a more general statute in the OMTA. There are no enactment dates which would indicate that the general statute controls over the specific statute. Furthermore, as the trial court notes, the ODMA has a higher standard. It requires the mineral interest to be subject of the title transaction. That element is not found in the OMTA. Thus, for those reasons, the ODMA controls in determining whether minerals are abandoned; the specific statute controls over the general statute. *Swartz*; *See Davis v. State Personnel Bd. of Rev.,* 64 Ohio St.2d 102, 105, 413 N.E.2d 816 (1980) (specific statute controls over general statute).

{¶37} Consequently, the trial court's decision concerning the ODMA and OMTA is correct. Any argument to the contrary is meritless.

### 3. Does the 1989 version of the ODMA apply?

{¶38} There are two versions of the ODMA that are at issue in this case. The current version is the 2006 version. The prior version is the 1989 version. The Tribetts invoked both versions in an attempt to have the minerals deemed abandoned.

{¶39} The trial court found that the 2006 version was not properly invoked because the Tribetts did not comply with the statute in giving the required notice to the mineral holders. Thus, the trial court found that the 2006 version could not be used to have the mineral interests deemed abandoned. That ruling is not an issue in this argument, but will be discussed later under the Tribetts cross-appeal.

{¶40} The trial court then went on to apply the 1989 version, the prior version of the statute. The Shepherds contend that the trial court should have only applied the 2006 version. They assert that neither the Tribetts nor their predecessors-in-interest sought to quiet title between 1989 and 2006, when the 1989 version was in effect. Thus, according to them, common sense points to the conclusion that only the current version of the ODMA is applicable. They similarly claim that the 2006 version was the law that was in effect during the events that gave rise to this suit and for that reason it should also apply. They further assert that the 2006 version should apply because the 2006 version provides mineral interest holders with the notice of possible divestment of their property rights.

{¶41} These arguments parallel arguments that were made and rejected in both *Walker* and *Swartz*. In both cases we found that the 1989 ODMA can still be used after the 2006 ODMA amendment because the prior statute was self-executing and the lapsed right automatically vested in the surface owner. *Walker*, 2014-Ohio-1499, at ¶ 30-51; *Swartz*, 2014-Ohio-2359, at ¶ 23-39.

{¶42} As explained in those cases, a vested interest can be a property right created statute; it "'so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.'" *Walker* at ¶ 40 quoting, *State ex rel. Jordan v. Indus. Comm.*, 120 Ohio St.3d 412, 2008-Ohio-6137, ¶ 9; *Swartz* at ¶ 29.

{¶43} The 1989 version of the ODMA states that any mineral interest held by anyone other than the surface owner "shall be deemed abandoned and vested" in the surface owner if none of the state circumstances applied. This version became effective March 22, 1989 and gave a three-year grace period until March 22, 1992 for mineral interest holders to take action for their interest to not be deemed abandoned. In the case at hand, the trial court found that there was no savings event for 20 years preceding the enactment date of the statute and not during the three-year grace period. Thus, the court concluded that the interest was deemed vested in the property owner on March 22, 1992. However, neither Shell nor any subsequent surface owner, until the Tribetts, took any action to formalize the statutory vesting; the Tribetts took

action in 2011 to have the minerals deemed abandoned and vested. This was done after the 2006 amendments to the ODMA.

**{¶44}** In *Walker* and *Swartz*, this court explained that R.C. 1.58 indicates that an amendment or repeal of a statute does not affect the prior operation of the statute or affect "any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded or incurred thereunder." R.C. 1.58(A)(1),(2). In the 2006 version of the ODMA there is no language to suggest that it should be applied retroactively; the 2006 amendment would not affect any "validation, cure, right, privilege, obligation, or liability previously acquired." *Walker* at ¶ 37; *Swartz* at ¶30-31.

**{¶45}** Furthermore, pursuant to R.C. 1.48, statutes are presumed to be prospective unless expressly made retrospective. *Walker* at ¶ 36; *Swartz* at ¶ 31. The 2006 ODMA contains no language eliminating property rights that were previously expressly said to be vested. *Swartz* at ¶ 34. Thus, without express language eliminating the prior automatic abandonment and vesting of rights under the old act, the amendments do not affect causes already existing. *Id*.

**{¶46}** Considering the above, this court concluded that the "when the 2006 version was enacted, any mineral interest that was abandoned under the 1989 version stayed abandoned and continued to be vested in the surface owner, and once the mineral interest vested in the surface owner, it reunited with the surface estate pursuant to statute regardless of whether the event has yet to be formalized." *Swartz* at ¶ 34.

**{¶47}** That said, we are aware of the *Dahlgren* decision from the Carroll County Common Pleas Court which reaches the opposite conclusion and found no merit with the "automatic vesting theory." *Dahlgren* concluded that the lack of a savings event at most created an inchoate right because judicial action would be required in order to officially transfer ownership on the record. In both *Walker* and *Swartz* this court addressed the *Dahlgren* decision and found no merit with rationale or conclusion reached by that court. *Walker* at ¶ 43-51; *Swartz* at 36-39. We explained that the terms inchoate and vested are generally opposites; "an inchoate right is a right that *has not fully* developed, matured or *vested*." *Swartz* at ¶ 38. Thus, we found that "it is contrary to the plain language of the statute to hold that the surface owner's right to

the abandoned mineral interest are inchoate even though the statute expressly stated that the right vested upon the lack of a savings event within the pertinent time period." *Id.* Therefore, based on our prior decisions and the reasoning 1989 version of the ODMA is applicable and any argument to the contrary is meritless.

### 4. Is the Application of the 1989 Version of the ODMA barred by the statute of limitations in R.C. 2305.04.

**{¶48}** Next, the Shepherds argue that the 1989 version of the ODMA is barred by the statute of limitations in R.C. 2305.04.

**{¶49}** The statute reads:

An action to recover the title to or possession of real property shall be brought within twenty-one years after the cause of action accrued, but if a person entitled to bring the action is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person, after the expiration of twenty-one years from the time the cause of action accrues, may bring the action within ten years after the disability is removed.

R.C. 2305.04.

**{¶50}** The Shepherds argue that the ODMA took effect on March 22, 1989 and thus, the 21 year statute of limitations in R.C. 2305.04 expired on March 22, 2010. The quiet title action was not filed until April 2012. Therefore, according to them, the action is barred by the statute of limitations.

**{¶51}** The Tribetts assert that the statute of limitations is not applicable to them because they were not attempting to recover title or possess the real estate. They claim that since the 1989 ODMA is self-executing and deems the interest vested, their quiet title action was merely an action to remove the cloud placed on their title by the Shepherds.

**{¶52}** This argument may have merit. However, we do not need to reach it because, even if the statute of limitations does apply, despite Shepherds argument to the contrary, the limitations period had not expired when the April 2012 action was filed.

**{¶53}** As aforementioned, under the 1989 statute, holders of mineral interests were granted 3 years to preserve their mineral interest if there was no other savings event under the statute that was applicable to them. Therefore, if the surface owner knew that there was no savings event within the preceding 20 year period, it could not act to have the mineral interest to be deemed abandoned until after the three year grace period. This time permitted the mineral owner time to preserve their interest. Thus, any cause of action to quiet title in the mineral interest would not accrue until the passing of the 3 year grace period, which would be March 22, 1992. Here, that is the date that the right vested. Twenty-one years from that date is March 22, 2013. Thus, at the time of filing the quiet title action in April 2012, the statute of limitations had not run. For those reasons, the statute of limitations argument fails.

<u>5. Constitutionality of 1989 version of ODMA.</u>

**{¶54}** The Shepherds argue that the 1989 version of the ODMA is unconstitutional. They acknowledge the United States Supreme Court's decision in *Texaco*, but argue that any reliance on that decision is misplaced because it is an old case, it was a 5-4 decision, and it is solely based on federal constitutional issue of due process, equal protection and taking claims under the Fourteenth Amendment, not on state constitutional provision barring retroactive legislation. However, their core argue is that the retroactive use of the 1989 version of the ODMA to divest the Shepherds of their mineral rights violates Article II, Section 28 of the Ohio Constitution (Retroactive Laws provision). The most we can construe from this argument is that they believe that the 20 year look-back period in the 1989 version of the ODMA is retroactive because it takes away their vested rights. They claim a statute is unconstitutionally retroactive "if, and only if, it also impairs a vested right or creates some new obligation or burden as well."

**{¶55}** In *Texaco,* the United States Supreme Court held that Indiana's DMA was not unconstitutional as a state may treat as abandoned a mineral interest that has not been used for 20 years and for which no statement of claim has been filed. *Texaco Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781 (1982). The Court found that it was the owner's failure to make any use of the property, rather than the state's action, that caused the lapse of the property right. *Id.* at 529-531 (no unconstitutional taking and

no impairment of contract). The Court also stated that no individual notice was required before abandonment and no opportunity to cure must be provided because the statute's two-year grace period provided notice. *Id.* (the only other required notice involved an opportunity to prove a savings event, not to avoid any prior automatic abandonment).

**{¶56}** Ohio's 1989 ODMA provided notice of three years within which the mineral owners could save their interest before any abandonment would vest. *See id.* at 454 and at 518-519 (Indiana gave a two-year grace period). Thus, since the Indiana statute did not violate the federal constitution, neither would Ohio's.[1]

**{¶57}** Admittedly, the argument being raised here is a specific Ohio retroactive issue. We have previously stated that there is no language in the 2006 version of R.C. 5301.56 to suggest that it is to be applied retroactively. *Walker* at ¶ 36; *Swartz* at ¶ 31-35. This discussion concerns the 20 year look-back period that is found in the 2006 statute. Our statement in *Walker* was based on the conclusion that a look-back period does not make a statute retroactive. *Swartz* at ¶ 34, fn. 2. The 1989 version, like the 2006 version, has a 20 year look-back period. Thus, if the look-back period for the 2006 version is not retroactive, neither is the look-back period in the 1989 version. Furthermore, the Ohio statute contains a three-year grace period. This three year period provides holders the opportunity to take action to preserve their mineral interests. Therefore, for those reasons we find that the 1989 version of the statute is not unconstitutional. Shepherds argument to the contrary fails.

---

[1]The dissent contends that it was not the intent of the 1989 ODMA to be self-executing. In doing so it cites to the Legislative Services final bill analysis for the 2006 ODMA. We disagree with the use of the 2006 ODMA bill analysis to indicate what the intent was when the 1989 ODMA was enacted. The intent of the 1989 ODMA can only be gathered from the bill analysis of the 1989 ODMA. It cannot be gathered from the bill analysis of the 2006 ODMA. Members of general assembly that enacted the 1989 ODMA were not necessarily the same members that enacted the 2006 ODMA. Furthermore, "[i]t is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. * * * If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly." *State v. Roberts*, 134 Ohio St.3d 459, 2012-Ohio-5684, 983 N.E.2d 334, ¶ 21, quoting *Provident Bank v. Wood,* 36 Ohio St.2d 101, 105–106, 304 N.E.2d 378 (1973). The inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or any other factors identified in R.C. 1.49 is inappropriate absent an initial finding that the language of the statute is ambiguous. *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16. We have not concluded that the 1989 version of the ODMA is ambiguous because we stated the look-back period is fixed.

### 6. Fixed or rolling look-back period?

**{¶58}** In this case, the trial court used a fixed 20 year look-back period, instead of a 20 year rolling look-back period. A fixed date would be from one specific date, which in this case would be the date of the statute and then look-back 20 years. Under a rolling look-back period, it would be any 20 year period. The Shepherds contend that the trial court erred in determining that the look-back period is a fixed period, rather than a rolling period.

**{¶59}** Recently, we have addressed an argument similar to the one made in this case and have concluded that the look-back period is a fixed period. *Eisenbarth v. Reusser*, 7th Dist. No. 13MO10, 2014-Ohio-3792, ¶ 33-51. We explained:

Ohio's 1989 DMA, however, merely states that the interest is deemed abandoned if none of the savings events occurred within the preceding twenty years. The question is: within the preceding twenty years of what? The Eisenbarths' position means that the answer to this question is: the preceding twenty years of every single day after the statute's enactment (until the new statute was enacted).

In considering this question, we ask: would a mineral rights owner be unreasonable in reading the statute on March 22, 1989, the day of enactment and saying, "I have a savings event in the past twenty years as I just bought these mineral rights in 1974; so, I'm safe," without realizing that they had to reassert their interest by 1994 (5 years after enactment and 2 years after the grace period)?

We credit such thoughts as reasonable, and we conclude that the statute is ambiguous as to whether the look-back period is anything but fixed. The use of the words "preceding twenty years," without stating the preceding twenty years of what, does not create a rolling look-back period. Rather, the imposition of successive look-back periods would have required language that the mineral interest is deemed abandoned and vested if no savings events occurred *within twenty years after the last savings event*.

The mention of successive claims to preserve and indefinite preservation in R.C. 5301.56(D)(1) could merely be a reference to any preservations that were filed under the OMTA as existed prior to the 1989 DMA

in order to show that a new claim to preserve can still be filed if the old one was filed outside of the new twenty-year look-back. There is other statutory language connecting the twenty-year look-back period to the date of enactment as (B)(2)'s grace period provides three years *from the date of enactment* before items will be deemed abandoned. R.C. 5301.56(B)(2). As forfeitures are abhorred in the law, we refuse to extend the look-back period from fixed to rolling. *See generally State ex rel. Falke v. Montgomery Cty. Resid. Dev., Inc.*, 40 Ohio St.3d 71, 73, 531 N.E.2d 688 (1988) (the law abhors a forfeiture).

*Id.* at ¶ 46-49.

**{¶60}** We stand by that decision.

**{¶61}** Regardless of whether the period is fixed or rolling, the Shepherds will not prevail on appeal because the only potential savings events are the two deeds that regurgitated the mineral reservations. As previously stated, those deeds do not constitute savings events because the mineral interests were not "subject of" the title transaction. Therefore, for those reasons, the Shepherds fixed versus rolling look-back period argument fails.

<u>Cross Appeal</u>

**{¶62}** The Tribetts cross appeals deals with the trial court's ruling regarding the 2006 version of the ODMA. They are alternative arguments in case this court would find that the trial court incorrectly applied the 1989 Act. As we find no error with the trial court's application of the 1989 version of the ODMA; the mineral interests vested with the surface owners, the Tribetts. Therefore, since the Tribetts prevail in having the mineral interest vest, we could decline to address the cross assignments of error. However, in the interest of thoroughness all arguments will be addressed.

<u>Cross Appeal First Assignment of Error</u>

**{¶63}** "The lower court erred to the prejudice of Plaintiffs-cross-appellants in overruling their motion for summary judgment on the issue of whether defendants-appellants are holders or holders' successors or assignees under Ohio Revised Code Section 5301.56 (2006)."

**{¶64}** This argument concerns solely the 2006 version of the ODMA. At the trial level, the Tribetts argued that under the 2006 version the Shepherds are not

holders, successors or assigns. Accordingly, the Tribetts contended that the affidavit of preservation that the Shepherds filed has no legal effect since only holders, successors or assigns are authorized to preserve.

{¶65} The trial court determined that the Shepherds were holders. It cited R.C. 5301.56(A), which defines holders as record holder of a mineral interest and "any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication that it is adverse to the interest of the record holder." The court concluded that the Shepherds are holders because their interests are derived from the record holders (Joseph, John and Keith Shepherd). This was done through testate or intestate succession.

{¶66} The Tribetts focus their argument on the fact that the legislature used the word "holder" instead of "heirs." The argument of the Tribetts is based on the premise that an heir is broader in definition than a holder. For instance, they state that heirs may often be divested of their interest by will, the probate process, the Ohio Statute of Descent and Distribution, and by creditors' claims.

{¶67} That statement is legally accurate. However, what if none of the above occurs. The person would be an heir and could qualify as a holder. While it may be true that not all heirs qualify as holders, that does not mean that heirs can never qualify as holders.

{¶68} Furthermore, even by the definitions in Black's Law Dictionary it appears that in some instances an heir can be a holder:

> 1. A person who, under the laws of intestacy, is entitled to receive an intestate decedent's property. * * * 2. Loosely, (in common–law jurisdictions), a person who inherits real or personal property, whether by will or by intestate succession. 3. Popularly, a person who has inherited or is in line to inherit great wealth. 4. *Civil Law*. A person who succeeds to the rights and occupies the place of, or is entitled to succeed to the estate of, a decedent, whereby an act of the decedent or by operation of law.

*Black's Law Dictionary* 740 (8th Ed.2004).

**{¶69}** As the fourth definition indicates, an heir is a person who succeeds to the rights of, which means his right is derived from the record holder. There does not appear to be any dispute that the Shepherds are heirs, that the mineral interests were not divested (by any other means than potentially abandonment), and their rights are derived from the record holder. Consequently, the trial court's analysis is not incorrect.

**{¶70}** The next argument under this assignment of error concerns notice requirements under the 2006 version of the ODMA. R.C. 5301.56(E) requires the holders to be given notice of the surface owners intent to pursue abandonment. The trial court found that the Tribetts did not comply with that provision and therefore, the Tribetts could not rely upon the 2006 version of the act to pursue their abandonment claim. That provision states:

> (E) Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface of the lands subject to the interest shall do both of the following:
>
> (1) Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.
>
> (2) At least thirty, but not later than sixty days after the date on which the notice required under division (E)(1) of this section is served or published, as applicable, file in the office of the county recorder of each county in which the surface of the land that is subject to the interest is located an affidavit of abandonment that contains all of the information specified in division (G) of this section.

R.C. 5301.56

{¶71} In this case, it is undisputed that the Tribetts did not attempt certified mail. The original holders were dead; therefore, instead of attempting service on a dead man, the Tribetts did a publication notification. It seems that they deemed it too cumbersome to look through the probate records to determine the heirs. The publication notice was on September 29, 2011, the Shepherds' affidavit of preservation was filed October 28, 2011.

{¶72} R.C. 5301.56(H)(1)(a) provides that a holder's claim to preserve a mineral interest or a holder's affidavit describing a savings event must be filed no later than sixty days after the date on "which the notice was served or published."

{¶73} Therefore, the claim of preservation that was filed by the Shepherds was timely under the statute, despite the fact that certified mail was never attempted. In *Dodd*, we stated in a similar situation that when the claim was filed within the time limit and certified mail was not attempted, the error was harmless. Our reasoning was that someone saw the publication and was able to file a claim within the required amount of time. *Dodd v. Croskey*, 7th Dist. No. 12HA6, 2013-Ohio-4251, ¶ 51-60.

{¶74} Therefore, on the basis of *Dodd*, the trial court's conclusion that the Tribetts could not utilize the 2006 version of the ODMA because they did not comply with the certified mail service requirement was incorrect. Any error from failing to serve by certified mail was harmless.

Cross Appeal Second Assignment of Error

{¶75} "The lower court erred to the prejudice of Plaintiffs-Cross Appellants in overruling their motion for summary judgment on the issue of whether a severed oil and gas mineral interest is abandoned and terminated and irrevocably vested in the surface owner upon a mineral interest holder's receipt of notice of abandonment under Ohio Revised Code Section 5301.56 (2006)."

{¶76} This assignment of error addresses the adequacy of the claim of preservation. If the 1989 act does not provide a basis for the Tribetts to have the mineral interests deemed abandoned, under the 2006 version of the ODMA, the Tribetts argue the claim to preserve filed by the Shepherds was not adequate. Our resolution of the Shepherds' appeal renders this assignment of error moot; it does not matter if the claim to preserve was adequate or inadequate, the mineral interest are

deemed abandoned under the 1989 Act. However, in anticipation of our decision being reviewed by the Ohio Supreme Court, we will still address this assignment of error. In doing so we are looking at the 2006 version of the ODMA in a vacuum without considering whether the mineral interests vested under the 1989 version. We have previously held that where there was no other savings event in the preceding 20 years, that under the 2006 version of the statute, the claim of preservation was a savings event. *Dodd* at ¶ 17-36 (Ohio Supreme Court has accepted this issue for review 138 Ohio St.3d 1432). That ruling is squarely on point for this issue. Thus, under the 2006 act, the Shepherds preserved their interests. The Tribetts argument to the contrary is overruled. The summary judgment award for the Shepherds on the 2006 ODMA was appropriately granted based on the claim to preserve.

Conclusion

**{¶77}** For the foregoing reasons, the judgment of the trial court is hereby affirmed. The trial court appropriately granted summary judgment in part for each party. However, since the 1989 version of the ODMA is applicable and the minerals automatically vest in the surface, the trial court appropriately quieted title in the minerals in favor of the Tribetts.

Donofrio, J., concurs.
DeGenaro, P.J., dissents; see dissenting opinion.

DeGenaro, P.J., dissenting.

**{¶78}** I agree with the majority that pursuant to this court's decision in *Dodd v. Croskey*, the 1986 and 1992 deeds do not constitute title transactions and thus are not savings events under R.C. 5301.56, Ohio's Dormant Mineral Act (ODMA). *See Dodd v. Croskey*, 7th Dist. No. 12 HA 6, 2013-Ohio-4257, *discretionary appeal accepted by*, 138 Ohio St.3d 1432, 2014-Ohio-889, 4 N.E.3d 1050. But I disagree with the majority and the recent trilogy holding that the 1989 ODMA controls resolution of this and other cases filed after the effective date of the 2006 ODMA: *Walker v. Shondrick–Nau,* 7th Dist. No. 13 NO 402, 2014-Ohio-1499 (Apr. 3, 2014) (fka *Walker v. Noon*); *Swartz v. Householder,* 7th Dist. Nos. 13 JE 24, 13 JE 25, 2014-Ohio-2359, --- N.E.3d --- (June

2, 2014); and *Eisenbarth v. Reusser,* 7th Dist. No. 13 MO 10, 2014-Ohio-3792 (Aug. 28, 2014). Consistent with the analysis in the minority opinion in *Eisenbarth* (DeGenaro, P.J. concurring in judgment only), the 2006 ODMA should control resolution of disputes over severed mineral rights where, as here: a) the mineral rights were severed and the surface owner's fee interest was acquired before or during the time frame when the 1989 ODMA was in effect; and b) the surface owner did not claim the mineral rights were abandoned until after the effective date of the 2006 ODMA. Moreover, the 1989 ODMA is unconstitutional both facially and as applied by the majority. Because Ohio affords its citizens' property rights with more protection than the federal Constitution or that of Indiana, the United States Supreme Court decision in *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) is not controlling for purposes of interpreting the ODMA. Thus, contrary to the *Walker, Swartz* and *Eisenbarth* trilogy, the 1989 DMA cannot be interpreted as an automatic, self-executing statute by relying on *Texaco,* and withstand scrutiny under Ohio's constitution. Statutes in derogation of common law should be strictly construed, particularly where forfeiture involves inviolate private property rights protected by the Ohio Constitution.

**{¶79}** By measuring the 1989 ODMA against federal, rather than Ohio constitutional property rights standards and declaring it a constitutional self-executing statute, the majority has created a forfeiture of inviolate private property rights in contravention of Ohio constitutional jurisprudence. The 1989 ODMA's lack of notice provisions makes it unconstitutional on its face, and by construing it as a self-executing statute resulting in automatic abandonment of a severed mineral interest by the holder and vesting that interest in the surface fee owner, the 1989 ODMA is unconstitutional as applied. Such a statutory construction results in an unlawful taking by operation of law, proscribed by Ohio Constitution, Article I, Sections 1 and 9, as construed by the Ohio Supreme Court in *City of Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115.

**{¶80}** Given Ohio constitutional principles and the minority analysis in *Eisenbarth*, the majority has incorrectly validated the trial court's resolution of the parties' interests to the severed mineral rights pursuant to the 1989 ODMA when the

2006 ODMA controls. As the Shepherds timely filed a preservation of claim under the 2006 ODMA, R.C. 5301.56(H), they continue to hold the severed mineral rights.

**{¶81}** Although first and foremost I disagree with the majority's decision that the 1989 ODMA governs here, secondarily I disagree with the analysis that the 1989 ODMA has a fixed look-back period. I interpret this holding as creating a bright-line rule. Instead, determination of whether a severed mineral interest has been abandoned must be decided on a case by case basis, and determine whether an initial savings event occurred within the original statutory 20 year period, to trigger a successive 20 year period in order to preserve the severed mineral interest. Operating under this rationale, the original statutory period in this case ran from March, 1969 through March 1992. Because no savings event occurred during that time period to create a second, successive 20 year period, the Sheperds' severed mineral interest was automatically abandoned by operation of the 1989 ODMA, and title to the mineral rights should be quieted in the Tribetts.

**Nature of Interest, Forfeiture, Vesting and Laches**

**{¶82}** Prior to the enactment of R.C. 5301.56 severed mineral rights were governed by Ohio common law. *Eisenbarth* at ¶79. (DeGenaro, P.J. concurring in judgment only). Generally, statutes in derogation of common law are strictly construed; specifically, statutes imposing restrictions in derogation of private property rights must be construed to avoid forfeiture, which is not favored in the law, and cannot be ordered absent clear statutory expression. *Id.* at ¶80. (DeGenaro, P.J. concurring in judgment only).

**{¶83}** A fee simple interest—which includes severed mineral rights—under common law "cannot be extinguished or abandoned by nonuse, and it is not necessary to rerecord or to maintain current property records in order to preserve an ownership interest in minerals."[2] "An individual's vested right—created by common law or statute—has been generally defined by the Ohio Supreme Court as being in essence a property right, which is to be recognized and protected by the state from arbitrary

---

[2] *Dahlgren v. Brown Farm Props., LLC.,* Carroll C.P. No. 2013 CVH 274455, *8, quoting the Prefatory Note of the Uniform Dormant Interests Act, approved by the National Conference of Commissioners on Uniform State Laws in 1986, approved by the A.B.A. on February 16, 1987.

deprivation; a vested right is more than a mere expectation or interest in the continuity of current common or statutory law; because it completely and definitely belongs to the individual it cannot be impaired or divested absent the individual's consent. The legal weight a vested right carries is reinforced by the axiom ingrained in Ohio common law that forfeiture is not favored in law or in equity." (Internal citations omitted) *Eisenbarth* at ¶78. (DeGenaro, P.J. concurring in judgment only).

{¶84} Consistent with principles of vesting, forfeiture and laches, the 1989 ODMA defined the surface fee owner's interest in the severed mineral rights as an inchoate right; by use of the term deemed, R.C. 5301.56 created the possibility of allowable vesting to occur, not an automatically vested right. *Id.* at ¶81-85, 90-91. (DeGenaro, P.J. concurring in judgment only).

{¶85} The ODMA is a remedial rather than a substantive statute because its purpose is to set forth the judicial process to follow when ownership of a severed mineral right is disputed; R.C. 5301.56 delineates the parameters to determine whether or not a severed mineral interest has been abandoned and if so, how to reunite it with the surface fee, and is to be applied prospectively to any case filed after each version's respective effective date. *Id.* at ¶86-89. (DeGenaro, P.J. concurring in judgment only). To construe the 1989 ODMA as controlling and an automatic self-executing statute has resulted in a retroactive, substantive deprivation of the Sheperds' common law vested interest in the severed mineral rights. *Id.* at ¶87, 92-97, 110-111. (DeGenaro, P.J. concurring in judgment only). Inherent in the automatic, self-executing character ascribed to the 1989 ODMA is that it operates as a forfeiture, which the law abhors. *Id.* (DeGenaro, P.J. concurring in judgment only).

{¶86} The look-back period provision of the ODMA should not be confused with the analytical principle of retroactivity. Applying the look back provision of the ODMA version in effect at the time ownership of the severed interest is being litigated in a particular case contemplates resolving a factual question. Determining which ODMA version controls in a particular case contemplates determining through which lens those facts are viewed. When R.C. 5301.56 is given the proper remedial interpretation, there is no issue of retroactive versus prospective application and the

propriety thereof. But where, as here, a substantive interpretation is given to the ODMA, applying it retroactively runs afoul of Ohio law in that regard.

{¶87} Finally, and conceding the doctrine of laches was not raised, nonetheless it bears consideration here as in *Eisenbarth.* The Tribetts' predecessors in interest and the Tribetts, who took title to the surface fee over a series of transactions in February, 1996, and March, 2006, failed to avail themselves of the 1989 ODMA while it was still in effect. An action to quiet title could have been filed as early as 1992 when the mineral rights arguably automatically reverted to the Tribetts' predecessors in interest by operation of the 1989 ODMA. Instead, it wasn't until after the 2006 ODMA went into effect, that the Tribetts published a notice of abandonment in February, 2012 *pursuant to the 2006 ODMA*—in response to which the Sheperds timely filed a claim to preserve—and then filed a quiet title action later that year. The prejudice to the Sheperds is evident. Logic dictates that if the holder can be divested of their severed mineral rights as having been abandoned due to their inaction under the 1989 ODMA, then the 2006 ODMA can similarly be used to preclude reuniting the interest with the surface fee because of the surface owner's inaction, i.e., his failure to commence a quiet title action while the 1989 ODMA was still in effect. *Id.* at ¶91. (DeGenaro, P.J. concurring in judgment only).

### 2006 ODMA Governs Resolution of Severed Mineral Rights Disputes

{¶88} Consistent with the analysis in the minority opinion in *Eisenbarth*, the majority has given the 1989 ODMA effect despite the General Assembly's enactment of the 2006 ODMA. Where litigation to resolve disputes between the surface fee owner and the severed mineral rights holder was filed after the 2006 ODMA took effect, the 2006 version controls; the 1989 version has no force or effect. This conclusion is consistent with reading the OMTA and the ODMA in pari materia, and more importantly, with the General Assembly's express intent in enacting the 2006 ODMA and the statute's clear unambiguous language. *Eisenbarth* at ¶104-118 (DeGenaro, P.J. concurring in judgment only).

{¶89} To interpret the 1989 ODMA as automatic and self-executing would confound the purpose of the OMTA, as well as the ODMA: to engender reliance upon publicly recorded documents rather than private ones for transactions affecting title to

real property, such as ownership of severed mineral rights. Nothing in either version of the ODMA suggests that it should not be construed in pari materia with the OMTA. Notice remains the watchword of the entire OMTA, an omission in the 1989 ODMA that was corrected by the General Assembly in the 2006 ODMA. R.C. 1.51 dictates that a special provision should be construed with a more general provision, if possible, to give effect to both. As part of the general OMTA statutory scheme, the ODMA can be read as defining the surface owner's interest in the severed mineral rights as an inchoate right and still give effect to its specific provisions and purpose within the global purposes of the OMTA as well. *Eisenbarth* at ¶85, 94, 104-107. (DeGenaro, P.J. concurring in judgment only).

{¶90} The ambiguity of the 1989 version of the ODMA is readily apparent. Courts are guided by canons of statutory construction when asked to construe ambiguous statutory language in order to decipher legislative intent. But given the unique procedural circumstances in this and the trilogy of recent cases in this district presents; namely, construing an ambiguous statute after it has been amended to remove the ambiguity, we need not resort to those canons in order to glean that intent. By virtue of the 2006 ODMA, we have the rare benefit of the General Assembly's statement of its intent with respect to the ambiguous language of the 1989 ODMA. That alone dictates that the 1989 version is no longer controlling; to decide otherwise makes the enactment of the 2006 ODMA meaningless. *Eisenbarth* at ¶67. (DeGenaro, P.J. concurring in judgment only).

{¶91} The majority asserts that the 1989 OMDA has not been found to be ambiguous. Majority, *supra,* at ¶56, footnote 1. I beg to differ.

{¶92} The *Eisenbarth* majority's analysis at ¶45-50, quoted in part here, Majority, *supra,* at ¶59, "simultaneously reinforces the ambiguity of the 1989 ODMA as a whole, and ignores the statutory language referencing successive filings." *Eisenbarth* at ¶124. (DeGenaro, P.J. concurring in judgment only). After posing the question "within the preceding twenty years of what?" *Eisenbarth* at ¶46, the majority in *Eisenbarth* held that "the statute is *ambiguous* as to whether the look-back period is anything *but fixed.*" *Id.* at ¶48. Said differently, the *Eisenbarth* majority concluded that the statute is ambiguous because that means the look-back period could be anything,

*including* fixed, which is how the panel chose to construe the look-back period. This point is borne out by the *Eisenbarth* majority then going on to posit a reasonable interpretation in response to the question, as quoted above. Majority, *supra,* at ¶59, quoting *Eisenbarth* at ¶46.

**{¶93}** Context also reinforces the conclusion that the *Eisenbarth* majority found the 1989 ODMA ambiguous: the trial court used a fixed period; the Eisenbarths urged a rolling look-back "meaning that the surface owner can pick any date" during the effective dates of the 1989 ODMA; the Reussers argued a dead-letter law position, "only one look-back period, looking back only from the effective date" of the 1989 ODMA; *Eisenbarth* at ¶36, 37, 39, with the majority further noting that "the three year grace period would also have to be implemented." *Id.* at ¶42. Here, the Sheperds propose a new calculation method, arguing for a trigger date based upon the date the surface fee owner files a quiet title action, whereas the Tribetts argue akin to the *Eisenbarth* majority's interpretation. The ambiguity of the 1989 ODMA speaks for itself, despite the majority's assertion here to the contrary.

**{¶94}** The majority further contends that the legislative history of the 2006 ODMA cannot be used to interpret the meaning of the 1989 ODMA, reasoning that the same members were not necessarily members of the General Assembly when each version of the ODMA was enacted, and courts must first look to the language of the statute itself. Majority, *supra* at ¶56, footnote 1. I disagree because I do not construe R.C. 1.49 as narrowly as the majority.

**{¶95}** First noting that the majority did not argue that the language of the 2006 ODMA cannot be considered; of course, subsequent statutory language is an appropriate analytical tool, perhaps the most reliable. The 2006 ODMA clarified the ambiguities in the 1989 ODMA which gave rise to the *Eisenbarth* majority's question: within the preceding twenty years of what? Majority, *supra,* at ¶59, quoting *Eisenbarth* at ¶46. R.C. 1.49(D) identifies former statutes, including those of the same or similar subjects as appropriate analytical tools. Typically, a court is presented with an ambiguous statute in the first instance, and looks to, inter alia, the former version or versions of the statute for guidance. Again, given the unique procedural history that this ambiguous statute has presented itself, to wit, the ambiguity was resolved by the

General Assembly without court intervention, it would be wholly consistent with R.C. 1.49(D) to look at the statutory language of the 2006 ODMA to interpret the 1989 ODMA.

**{¶96}** Second, R.C. 1.49 states that a court "may consider *among other matters*" and then delineates six factors by way of example, not limitation, to consider when construing legislative intent. *Id.*

> Courts review several factors in order to glean the General Assembly's intent, including the circumstances surrounding the legislative enactment, the history of the statute, the spirit of the statute (the ultimate results intended by adherence to the statutory scheme), and the public policy that induced the statute's enactment.

*State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513-14, 668 N.E.2d 498, 504 (1996), citing R.C. 1.49.

**{¶97}** Part of the 1989 ODMA history is in fact, the amendments made in the 2006 ODMA and the General Assembly's articulated reasons for doing so. R.C. 1.49(C) permits a court to consider "[t]he legislative history" without qualifier, hence the holding in *Clyde.* Legislative history was not limited to merely the specific history of a specific amendment. For example, interpreting Ohio's felony sentencing statutory scheme, from merely 2000 to date, reveals a review of the legislative history encompassing going backwards and forwards in time as the Ohio Supreme Court and the General Assembly react to the others conclusion in the process when ambiguity is raised.

**{¶98}** Nor is there any support in Ohio constitutional, statutory or common law to support the majority's proposition that later sessions of the General Assembly can modify anything done by a previous iteration of the body merely because it is not constituted by the same membership, because no such authority exists; and its placement in a footnote is indicative of the argument's merit.

> The constitutional grant of authority at Section 1, Article II vests in the General Assembly the plenary power to enact any law except those that conflict with the Ohio or United States constitutions. *State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas* (1967), 9 Ohio St.2d

159, 162, 38 O.O.2d 404, 224 N.E.2d 906. The General Assembly may make amendments, or create exceptions, to previously enacted legislation, such as forbidding things previously permitted, and it may modify or entirely abolish common-law actions. *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 214, 527 N.E.2d 1235; *Thompson v. Ford* (1955), 164 Ohio St. 74, 79, 57 O.O. 96, 128 N.E.2d 111; *Pohl v. State* (1921), 102 Ohio St. 474, 476, 132 N.E. 20, reversed on other grounds by *Bartels v. Iowa* (1923) 262 U.S. 404, 43 S.Ct. 628, 67 L.Ed. 1047; *Washington Cty. Dept. of Human Servs. v. Rutter* (1995), 100 Ohio App.3d 32, 35, 651 N.E.2d 1360. Such legislative action is constitutionally permitted because, although "[r]ights of property cannot be taken away or interfered with without due process of law * * *[,] there is no property or vested right in any of the rules of the common law, as guides of conduct, and they may be added to or repealed by legislative authority." *Leis v. Cleveland Ry. Co.* (1920), 101 Ohio St. 162, 128 N.E. 73, paragraph one of the syllabus.

*Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶128.

{¶99} The Ohio Constitution has vested the General Assembly with the exclusive, plenary authority to enact legislation. Specifically, it has exercised that authority to clarify and correct an ambiguous statute, without intervention from the judiciary. There is nothing in Ohio constitutional, statutory or common law which requires that the courts must first address a statutory ambiguity; that the General Assembly cannot recognize and correct the ambiguity on its own accord. To so hold interferes with a separate branch's constitutionally defined authority.

{¶100} Viewed from the perspective that the 2006 ODMA is in effect, along with the General Assembly's expressed reasons for making the amendments in that version, and that statutes in derogation of common law must be strictly construed to preserve individual property rights, the phrase 'deemed abandoned and vested' in R.C. 5301.56(B)(1), should be construed as defining an inchoate right. *Eisenbarth* at ¶69. (DeGenaro, P.J. concurring in judgment only).

{¶101} The 2006 version of R.C. 5301.56 does what the General Assembly intended the 1989 ODMA to do but failed to achieve: balance the complementary policy goals of creating a reliable record chain of title via the Ohio Marketable Title Act (OMTA) statutory scheme—which includes the ODMA—and facilitate economic use of mineral rights. The Ohio General Assembly recognized that the 1989 ODMA had technical problems and was thus seldom used. Specifically, the 1989 ODMA failed to define how to calculate the 20 year look-back period before allowable vesting can occur—to use the General Assembly's verbiage—and define the process to reunite the interests in the surface owner. The 2006 ODMA corrected inoperable, not merely ambiguous, statutory language. The current version of R.C. 5301.56 not only clarifies the process, it specifies the look-back period trigger and mandates notice to the holder before the mineral rights are deemed abandoned; only then can allowable vesting occur with the surface owner. *Eisenbarth* at ¶70. (DeGenaro, P.J. concurring in judgment only).

{¶102} Given the Ohio General Assembly's expressed purpose of the 2006 ODMA and the clear, unambiguous language of its modifications, the majority incorrectly continues to follow the recent trilogy of cases from this district, and determine the parties' interests to the severed mineral rights pursuant to the 1989 ODMA. As the Sheperds timely recorded a claim to preserve the severed mineral rights under the 2006 ODMA, R.C. 5301.56(H), they continue to hold that interest. Thus, I concur in the ultimate conclusion that the Sheperds did not abandon their mineral rights and would reverse the trial court, but do so pursuant to the 2006 ODMA. *Eisenbarth* at ¶118. (DeGenaro, P.J. concurring in judgment only).

### The 1989 ODMA is Unconstitutional

{¶103} This is the first time the constitutionality of the 1989 ODMA has been properly before this court for consideration, and arguably, resolution of the issue could make the above analysis moot. I disagree with the majority's reliance on *Texaco* as well as the conclusion that the 1989 ODMA is constitutional. Discussion of *Texaco* necessitates consideration of the Supreme Court's constitutional analysis of Indiana's Act juxtaposed with Ohio's heightened protection of private property rights relative to the federal and Indiana constitutions. Ohio more vigorously protects its citizens'

private property rights by statute than Indiana does, and additionally, the Ohio Constitution affords more protection to property owners than either the Indiana or federal constitutions, thus the decision in *Texaco* has no precedential value in Ohio. The ODMA presently is not, nor was actually or intended to be, self-executing. More importantly, to construe it as such runs contrary to the Ohio Constitution's declaration that property rights in this state are inalienable and inviolate.

**{¶104}** A fee simple interest—which includes severed mineral rights—under common law "cannot be extinguished or abandoned by nonuse, and it is not necessary to rerecord or to maintain current property records in order to preserve an ownership interest in minerals."[3] An individual's vested right—created by common law or statute—has been generally defined by the Ohio Supreme Court as being in essence a property right, to be recognized and protected by the state from arbitrary deprivation; a vested right is more than a mere expectation or interest in the continuity of current common or statutory law; because it completely and definitely belongs to the individual it cannot be impaired or divested absent the individual's consent. *State ex rel. Jordan v. Indus. Comm.,* 120 Ohio St.3d 412, 2008-Ohio-6137, 900 N.E.2d 150, ¶9; *Walker*, ¶40. The legal weight a vested right carries is reinforced by the axiom ingrained in Ohio common law that forfeiture is not favored in law or in equity. *State ex rel. Lukens v. Indus. Comm.*, 143 Ohio St. 609, 611, 56 N.E.2d 216 (1944).

**{¶105}** As a preliminary observation, it appears that Indiana's Act remains unchanged with respect to its notice provisions, presumably since the U.S. Supreme Court in *Texaco* held the Act did not violate federal constitutional principles, affirming the Indiana Supreme Court's decision in *Short v. Texaco, Inc.,* 273 Ind. 518, 406 N.E.2d 625 (1980) that the self-executing statutory abandonment is constitutionally enforceable.

**{¶106}** Substantively, the language of the Indiana Act is unequivocal, and lends itself to an interpretation that vesting is automatic. Ind.Code 32-23-10-2 provides: "An interest in coal, oil and gas, and other minerals, if unused for a period of twenty (20)

---

[3]*Dahlgren v. Brown Farm Props., LLC.,* Carroll C.P. No. 2013 CVH 274455, *8, quoting the Prefatory Note of the Uniform Dormant Interests Act, approved by the National Conference of Commissioners on Uniform State Laws in 1986, approved by the A.B.A. on February 16, 1987.

years, *is extinguished and the ownership reverts* to the owner of the interest out of which the interest in coal, oil and gas, and other minerals was carved. However, if a statement of claim is filed in accordance with this chapter, the reversion does not occur." (Emphasis added.) *Id.* As discussed in *Eisenbarth*, this language is consistent with other portions of the OMTA which uses terms such as 'null and void' or 'extinguished' and arguably warrants an automatic characterization, unlike the qualified phrase in R.C. 5301.56 'deemed abandoned and vested,' which should not be construed as having similar automatic effect. *Id.* at ¶85, 94 and 100. (DeGenaro, P.J. concurring in judgment only).

{¶107} In contrast to the Indiana Act, the Ohio General Assembly amended R.C. 5301.56 to clarify when a mineral interest became abandoned and delineate the exact process to reunite the severed mineral interest with the surface fee. Central to the modifications in the 2006 ODMA is that in all instances *before any allowable vesting can occur*, the surface owner must notify the holder of the severed mineral rights of the owner's intention to declare the rights abandoned, even in the absence of a saving event within the now clearly defined look-back period, in order to afford the holder one final opportunity to preserve their mineral rights from abandonment. R.C. 5301.56(E)(2) and (G). Even where the holder failed to engage in one of the statutorily defined actions to preserve their mineral rights, including merely filing an affidavit preserving those rights, the Ohio General Assembly gave the holder 60 days to, in essence, revive their mineral interest. This is the antithesis of a self-executing statute. Moreover, that the 1989 ODMA was not, nor intended to be, self-executing is evident from the testimony of the 2006 ODMA sponsor and the Legislative Services final bill analysis, discussed in *Eisenbarth* at ¶108-115. (DeGenaro, P.J. concurring in judgment only). This vigorous statutory protection stands in stark contrast with Indiana's Act.

{¶108} Ohio's General Assembly seized the opportunity to clarify its intent and correct R.C. 5301.56, thereby statutorily rejecting *Texaco*. Here, by measuring R.C. 5301.56 against federal constitutional standards—and not Ohio constitutional standards—the majority has created a forfeiture of what were heretofore private property rights protected at common law from extinguishment by abandonment or

nonuse; under the common law affirmative action was required by the mineral rights holder before they could be divested of their interest. This is in direct contravention of the General Assembly's express decision to give Ohio citizens more statutory protection than the Indiana Legislature affords its citizens.

{¶109} Thus, *Texaco* has no bearing on which version of R.C. 5301.56 controls disputes over ownership of mineral rights brought after the Act's June 30, 2006 effective date, particularly the issue of whether the 1989 ODMA is unconstitutional when measured against Ohio's constitution.

{¶110} Ohio's vigorous statutory protection, when contrasted with the Indiana Act, is rooted in Ohio's heightened constitutional protection of private property rights. "All men are by nature, free and independent, and have certain inalienable rights, among which are * * * acquiring possessing, and protecting property" Ohio Constitution, Article I, Section 1. "Private property shall ever be held inviolate." Ohio Constitution, Article I, Section 19. The Ohio Supreme Court has described the extent of this right as follows:

> "The right of private property is an *original* and *fundamental* right, existing anterior to the formation of the government itself[.] *** The right of private property being, therefore, an *original right,* which it was one of the primary and most sacred objects of government to secure and protect[.] *** In light of these Lockean notions of property rights, it is not surprising that the founders of our state expressly incorporated individual property rights into the Ohio Constitution[.] *** Ohio has always considered the right of property to be a fundamental right. There can be no doubt that the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces."

(Emphasis in original, internal citations omitted). *City of Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶36-38.

{¶111} The distinction between federal versus Ohio property rights in eminent domain jurisprudence is instructive here. In *Norwood,* the Ohio Supreme Court held that the Taking Clause under the Ohio Constitution affords greater protection than the

U.S. Constitution, refusing to extend the holding in *Kelo v. City of New London,* 545 U.S. 469, 488–90, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005)—that economic development alone constitutes public purpose under federal eminent domain jurisprudence—as inconsistent with Ohio constitutional jurisprudence.

> Writing for a unanimous Court in *Norwood,* then Justice O'Connor noted:
>
> Although it determined that the Federal Constitution did not prohibit the takings, the court acknowledged that property owners might find redress in the states' courts and legislatures, which remain free to restrict such takings pursuant to state laws and constitutions.
>
> In response to that invitation in *Kelo*, Ohio's General Assembly unanimously enacted 2005 Am.Sub.S.B. No.167. The legislature expressly noted in the Act its belief that as a result of *Kelo,* "the interpretation and use of the state's eminent domain law could be expanded to allow the taking of private property that is not within a blighted area, ultimately resulting in ownership of that property being vested in another private person in violation of Sections 1 and 19 of Article I, Ohio Constitution." Section 4(A), 2005 Am.Sub.S.B. No. 167.

*Id.* at ¶5-6.

{¶112} It is noteworthy that the General Assembly, perhaps in response to *Kelo* but at a minimum, recognizing the inoperability of the 1989 DMA, likewise seized the opportunity to clarify its intent and correct R.C. 5301.56. More importantly, the clarifications and amendments in the 2006 version brought the ODMA into compliance with Ohio constitutional law. *See Eisenbarth* at ¶108-115. (DeGenaro, P.J., concurring in judgment only). The General Assembly recognized that the 1989 ODMA "did not clearly define when a mineral interest became abandoned and exactly how the process to reunite the mineral ownership with the surface ownership was to be accomplished." H.B. 288 Rep. Mark Wagoner, Sponsor testimony before the Ohio House Public Utilities Committee. The 2006 ODMA removed the ambiguity and potentially arbitrary operation of the 1989 version by clearly defining the triggering event to commence a 20 year look-back period and requiring notice to the mineral rights holder before seeking abandonment, including enabling the holder to revive a

possibly abandoned interest. R.C. 5301.56(H). As a result, the General Assembly's express purposes of: (1) requiring recording all interests to facilitate a searchable chain of title in real property in general, and mineral rights specifically; and (2) encouraging economic mineral production without violating inalienable property rights were achieved.

{¶113} Further, "[t]o be truly in the public welfare within the meaning of [Ohio Constitution, Article I, Section 19] and thus superior to private property rights, any legislation must be reasonable, not arbitrary, and must confer upon the public a benefit commensurate with its burdens upon private property." *Direct Plumbing Supply Co. v. City of Dayton,* 138 Ohio St. 540, 546, 38 N.E.2d 70 (1941). The public benefit of the ODMA is to create a chain of title with respect to ownership of severed mineral rights in order to facilitate the economic development of those minerals. However, to facilitate that end by construing the 1989 ODMA as automatically divesting the holder of their severed mineral rights without notice imposes an undue burden upon those private property rights. Moreover, the 1989 ODMA failed to facilitate economic development of mineral interests, as acknowledged by the General Assembly in enacting the 2006 ODMA.

{¶114} Applying the majority's rationale, the Tribetts' have owned the mineral rights by virtue of the 1989 ODMA automatically vesting them with the formerly severed interest since March 22, 1992. Yet, the Tribetts failed to further the public benefit of oil and gas development by doing nothing with the mineral rights from 1992 through April, 2012, when they filed the quiet title action, merely filing a notice of abandonment *pursuant to the 2006 ODMA.* Thus, their inaction with respect to developing the mineral interest is equal to that of the Shepherds. To favor the Tribetts' inaction over the Shepherds' condones arbitrary action that cannot justify violating the Shepherds' constitutionally protected property rights.

{¶115} Moreover, at least four other state supreme courts have found their dormant mineral statutes unconstitutional pursuant to their respective state constitutions, because each state's act, like Ohio's as interpreted by the prior case trilogy and the majority here, operated as a forfeiture on the severed mineral interest holder, because reversion with the surface fee occurred automatically without prior

notice or hearing. *Wilson v. Bishop*, 82 Ill.2d 364, 412 N.E.2d 522 (1980); *Contos v. Herbst*, 278 N.W.2d 732 (Minn.1979); *Wheelock v. Heath*, 201 Neb. 835, 272 N.W.2d 768, (1978); *Chicago & N.W. Transp. Co. v. Pedersen*, 80 Wis.2d 566, 259 N.W.2d 316 (1977). The rationale applied by all four courts has been summarized by the Illinois Supreme Court in *Wilson:*

> The Act declares that any severed interest in oil and gas shall be deemed abandoned unless the record owner, within a period of 25 years, engages in the actual production of oil or gas, publicly exercises specified acts of ownership by means of instruments recorded in the office of the recorder of deeds for the county wherein the interest is located, or files with the county recorder a written claim of interest within 3 years after the effective date of the Act or within 25 years from the last public act of ownership, whichever is later. If a written claim of interest is recorded, ownership of the interest is preserved only for the next 25 years. In the absence of one of the required acts, a statutory abandonment occurs and the severed interests automatically vest in the surface owners.

> The statute provides no notice of any kind to record owners of oil and gas interests that they must record a statement of their interest in order to prevent the forfeiture of their property interests. While we recognize the beneficial purpose of the statute to facilitate the production of existing oil, gas and other mineral resources, particularly where ownership of the interests has become increasingly fractionalized and scattered, the record owners are vested with property interests entitled to the procedural safeguards of due process. Failure to provide those owners with adequate notice and an opportunity to be heard renders the statutory scheme unconstitutional.

> When faced with similar statutes, the courts in other States have reached like conclusions. In *Wheelock v. Heath* (1978), 201 Neb. 835, 272 N.W.2d 768, the statute declared that severed mineral interests would be deemed abandoned unless the record owner publicly exercised

defined ownership rights within a period of 23 years or asserted his interest in an action filed within 2 years after the effective date of the statute. In *Chicago & North Western Transportation Co. v. Pedersen* (1977), 80 Wis.2d 566, 259 N.W.2d 316, the statute provided for the reversion of severed mineral interests to the surface fee owner unless the owner of the mineral interests registered his ownership and paid an annual registration fee. In *Contos v. Herbst* (Minn.1979), 278 N.W.2d 732, the statute provided for the forfeiture of severed mineral interests to the State unless the record owner filed a registration statement. In both *Wheelock* and *Pedersen*, the forfeiture occurred without any notice, hearing or compensation to the record owner. The statute in *Contos* provided for notice by publication in a legal newspaper within each county, apparently in three issues, and in two mining publications with a nationwide circulation, and it provided for compensation following forfeiture. The court, however, found that notice by publication of the statutes alone was inadequate and concluded: "We cannot imagine a more clear violation of due process than the failure to provide a hearing before forfeiture." 278 N.W.2d 732, 743, citing *Mullane v. Central Hanover Bank & Trust Co.* (1949), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.

*Wilson,* 82 Ill.2d at 370-71, 412 N.E.2d at 525.

{¶116} By measuring the 1989 ODMA against federal, rather than Ohio constitutional property rights standards and declaring it a constitutional self-executing statute, the majority has created a forfeiture of inviolate private property rights in contravention of Ohio constitutional jurisprudence. The 1989 ODMA's lack of notice provisions makes it unconstitutional on its face, and by construing it as a self-executing statute resulting in automatic abandonment of a severed mineral interest by the holder and vesting that interest in the surface fee owner, the 1989 ODMA is unconstitutional as applied. Such a statutory construction results in an unlawful taking by operation of law, proscribed by Ohio Constitution, Article I, Sections 1 and 9, as construed by the Ohio Supreme Court in *Norwood*.

**Look-back Period Based Upon Case Specific Trigger**

{¶117} Assuming arguendo the 1989 ODMA controls, in construing the meaning of the ambiguous phrase 'preceding 20 years,' I disagree with the parties' and the majority's characterization of the look-back period as either rolling or fixed.  I interpret this holding as creating a bright-line rule.  Instead, determination of whether a severed mineral interest has been abandoned must be decided on a case by case basis, to determine whether an initial savings event occurred within the original statutory 20 year period, to trigger a successive 20 year period in order to preserve the severed mineral interest.  The provision in R.C. 5301.56(D)(1) delineating the process for preserving severed mineral rights for successive terms signals the General Assembly's intention that in order to preserve that interest, every 20 years a savings event must occur, or the holder must file a claim to preserve, in order to retain their interest for another 20 years. *Eisenbarth* at ¶122-124.  (DeGenaro, P.J. concurring in judgment only).

{¶118} R.C. 5301.56(D)(1) provides that the holder of severed mineral rights can preserve their mineral rights indefinitely by filing successive claims for successive 20 year periods.  R.C. 5301.56(B)(1)(c)(v), 1988 S 223, eff. 3-22-89 (a mineral interest will not be deemed abandoned if within the preceding 20 years a claim to preserve has been filed pursuant to division (C)(1) of the statute).  Because R.C. 5302.56(D)(1) refers to successive filings, the 1989 ODMA contemplates that the holder of severed mineral rights was required to renew that interest of record every 20 years.

{¶119} Here, the original severance and reservation of the mineral rights in the 1962 deed conveying the surface fee and coal interests to Seaway Coal was the subject of a title transaction contemplated by R.C. 5301.56(B)(1)(c)(i), and thus a savings event which, in theory, would have preserved the mineral rights for an initial statutory 20 year period.  But this calculation cannot apply here because this event occurred beyond the 20 year look-back period from the effective date of the 1989 ODMA, specifically 1969.  Thus, a claim to preserve had to be recorded within the statutory three year grace period, specifically by March, 1992.  Thus, the Sheperds or their predecessors in interest were required to record a claim to preserve before the

initial statutory 20 year period expired in March, 1992, in order to preserve their mineral rights for another 20 year period, which they failed to do.

**{¶120}** Applying the rationale that the 1989 ODMA is controlling and an automatic self-executing statute, the October, 2011 claim to preserve cannot constitute a savings event for the Sheperds because they were no longer the holders of mineral rights that could be preserved as of that date. Those severed mineral rights automatically vested and reverted to the Tribetts' predecessors in interest in 1992 by operation of the 1989 ODMA, 19 years earlier. Only the 2006 ODMA provides a 60 day window for a mineral rights holder to preserve their interest where, as here, the holder has been notified that there has been a gap in excess of 20 years from a preceding savings event. *Id.* at ¶121. (DeGenaro, P.J. concurring in judgment only). The majority has correctly acknowledged in its alternative holding that, in the event the Ohio Supreme Court determines the 1989 ODMA does not apply, only the 2006 ODMA affords a severed mineral holder these protections, and in that event, the Sheperds preserved their mineral interest, pursuant to our decision in *Dodd*, *supra*. Majority, *supra,* at ¶76. And pursuant to the 2006 ODMA, that interest is preserved through October, 28, 2032.

**{¶121}** Operating under this rationale, the original statutory period in this case ran from March 1969 through March 1992. Because no savings event occurred during that time period to create a second, successive 20 year period, the Sheperds' severed interest had been reunited with the surface fee in 1992 by operation of the 1989 ODMA. Accordingly, the majority has correctly concluded that title to the mineral rights should be quieted in the Tribetts.

**{¶122}** As an aside, an inconsistency regarding the continued applicability of the 1989 ODMA has arisen in this district. First, in *Dodd*, the August 5, 2009 Survivorship Deed, through which the Dodd's acquired their surface fee interest, stated that the mineral rights were severed in 1947, and that there were no further transactions. *Id. at* ¶4. Applying the 2006 ODMA, we found that there were no savings events within the 20 years preceding the Dodd's recorded notice of abandonment, but because the Croskey's filed a timely claim to preserve, we held they retained the severed mineral rights. *Id.* at ¶49-50, 68. In the course of the analysis,

discussing *Riddel v. Layman,* 5th Dist. No. 94CA114, (1995), we noted in *Dodd* that the Ninth District resolved that case based upon the previous version of the ODMA "that was in effect at the time" *Id.,* ¶46, demonstrating an awareness of the 1989 ODMA. *Dodd* did not apply the 1989 ODMA, for if we had, the Croskeys' mineral rights would have been held to be automatically reunited with the Dodds' surface fee interest in 1992 by operation of the 1989 ODMA. The claim to preserve the Dodds recorded in 2010 in that case was filed 18 years after those interests had reverted to the Croskeys, the last title transaction involving the mineral interest was when they were originally severed from the surface fee in 1947.

{¶123} When the argument was raised in *Swartz, supra,* that *Dodd* did not address the 1989 ODMA, suggesting a sub silentio determination that the 1989 ODMA did not apply, the *Swartz* panel rejected that argument, noting that the parties in *Dodd* did not raise any arguments regarding the 1989 ODMA but only the 2006 ODMA, and then reasoning: "If parties do not invoke a statute, we proceed under the impression that the parties agreed that said statute was not dispositive, i.e. if parties agree that there was no abandonment under the 1989 DMA, then they proceed under only the 2006 DMA." *Swartz* at ¶17. This reasoning is flawed for two reasons. First, *Swartz* itself undercut that rationale because it concluded that the 1989 ODMA *was dispositive,* as did *Walker* before it and again after in *Eisenbarth.* Secondly,

> [A]n appellate court will affirm on other grounds a legally correct judgment, reasoning that no prejudice results from the trial court reaching the right result albeit for the wrong reason. *Reynolds v. Budzik*, 134 Ohio App.3d 844, 732 N.E.2d 485, fn. 3 (6th Dist.1999) fn. 3, citing *Newcomb v. Dredge*, 105 Ohio App. 417, 424, 152 N.E.2d 801 (2d Dist.1957); *State v. Payton*, 124 Ohio App.3d 552, 557, 706 N.E.2d 842 (1997).

> Moreover, "an appellate court is bound to affirm a trial court's judgment that is legally correct on other grounds regardless of the arguments raised or not raised by the parties." *State v. Helms*, 7th Dist. No. 08 MA 199, 2013-Ohio-5530, ¶10 (Vukovich, J. concurring), citing *State v. Ingram*, 9th Dist. No. 25843, 2012-Ohio-333, ¶7.

*Eisenbarth* at ¶121. (DeGenaro, P.J. concurring in judgment only).

{¶124}     *Dodd* was an appeal from summary judgment and our standard of review was de novo. *Id.* at ¶12. Thus, we were not bound by the parties' arguments in *Dodd,* we were obligated to apply the correct law regardless of the conclusions of the trial court or the parties. *Eisenbarth* at ¶121. (DeGenaro, P.J. concurring in judgment only).

{¶125} Returning to the inconsistency concern, in *Walker, Swartz* and *Eisenbarth* the only way for the severed mineral interest holder to retain ownership of that interest was for this court to conclude that the 2006 rather than the 1989 ODMA controlled. In *Walker* and *Swartz,* although no savings event occurred during the effective dates of the 1989 ODMA, *Walker* at ¶2, *Swartz* at ¶5, 8, the mineral interest holders recorded claims to preserve their interest pursuant to the 2006 ODMA in response to the notices of abandonment recorded by the surface fee holders in 2011. *Walker* at ¶5-6, *Swartz* at ¶2, 6. The panels in *Walker* and *Swartz* held the severed mineral interests all automatically reverted to the surface fee owners by operation of the 1989 ODMA, *Walker* at ¶41, *Swartz* at ¶27, with the panel in *Walker* refusing to address the holder's 2006 ODMA arguments, *Walker* at ¶31-34, and the panel in *Swartz* concluding that they would not address the argument that the 2011 claims to preserve recorded in that case were effective, reasoning that "these 2006 DMA arguments were only presented for our review if we first concluded that the 1989 DMA was inapplicable. As we have found that the self-executing 1989 DMA can still be utilized to show abandonment, these conditional arguments are moot." *Id.* at ¶47.

{¶126} But with an identical fact pattern to *Walker* and *Swartz,* the *Eisenbarth* majority reached the opposite conclusion, and permitted the severed mineral interest holder to avail themselves of the 2006 ODMA to retain that interest. In *Eisenbarth,* the panel was unanimous in holding that a recorded oil and gas lease over the severed mineral rights can be a savings event, *Id.* at ¶32, and two leases were executed, one in 1974 and the other in 2008. *Id.* at ¶5, 8. However, the panel diverged on the effect of each lease. While its reasoning is unclear, the *Eisenbarth* majority, reiterating the automatic self-executing character of the 1989 ODMA, *Id.* at ¶9, footnote 1, held that the mineral interest holder retained the mineral rights. *Id.* at ¶46-51. Assuming

arguendo that the 1989 ODMA controlled, the *Eisenbarth* minority opinion reached the opposite conclusion, reasoning:

> Because R.C. 5302.56(D)(1) refers to successive filings, the 1989 ODMA contemplated that the holder of severed mineral rights was required to renew that interest of record every 20 years. Thus, the Reussers were required to make some kind of successive filing before the initial 20 year period expired. Because they failed to do so, by operation of the 1989 ODMA, the severed mineral rights reverted back to the Eisenbarths on January 24, 1994. Applying the majority's rationale that the 1989 ODMA is an automatic self-executing statute, the 2008 oil and gas lease cannot constitute a savings event for the Reussers because they were no longer holders of mineral rights that could be preserved as of that date.

*Eisenbarth* at ¶66. (DeGenaro, P.J. concurring in judgment only).

{¶127} Next, in *Farnsworth v. Burkhart,* 7th Dist. No. 13 MO 14, 2014-Ohio-4184, (Sept. 22, 2014), as in *Swartz,* the only way for the severed mineral interest holder to retain ownership of that interest was for this court to conclude that the 2006 rather than the 1989 ODMA controlled. In *Farnsworth,* no savings event occurred during the effective dates of the 1989 ODMA, yet the majority relied upon a claim to preserve recorded pursuant to the 2006 ODMA to hold that the severed mineral interest holders still retained that interest. Again, assuming arguendo that the 1989 ODMA controlled, the minority opinion held that the severed mineral interest reverted to the surface fee owner: "the Burkharts were no longer holders of mineral rights that could be transferred or preserved as of 2012, because the severed interest had been reunited with the surface fee in 2000." *Farnsworth* at ¶71. (DeGenaro, P.J. concurring in judgment only). Finally, in this case, the majority holds that the severed mineral interest is automatically reunited with the surface fee by operation of the 1989 ODMA, but in the event the Ohio Supreme Court holds otherwise, the severed mineral interest holder would retain that interest in light of the timely claim to preserve which was recorded pursuant to the 2006 ODMA. Majority, *supra* at ¶76.

**{¶128}** Thus we have a divergence of outcomes in this district where the severed mineral interest reunited by operation of the 1989 ODMA. In *Swartz, Walker* and in this case, the majority refused to permit the severed mineral interest holder to avail themselves of the 2006 ODMA and retain the interest as a result of a recorded claim to preserve, whereas in *Dodd, Eisenbarth* and *Farnsworth*, the severed mineral interest holders were able to avail themselves of the 2006 ODMA and preserve their interest. This discrepancy in outcome must be reconciled.

## Conclusion

**{¶129}** While feigning to engage in statutory construction in order to decipher what the General Assembly meant by 'deemed abandoned and vested,' 'preceding 20 years' and 'successive' makes for interesting academic writing or a law school exam question, to do so here is disingenuous. The timing of the enactment of both versions of the ODMA has presented Ohio's judiciary with a rare opportunity; virtually every case involving the statute has been filed *after* the amendments to the ambiguous statute have been enacted. Instead of engaging in the typical exercise of divining legislative intent by reading the proverbial tea leaves, the General Assembly has provided us with a billboard of the meaning of these terms by virtue of sponsor testimony and Legislative Services' analysis of the 2006 ODMA, let alone the express statutory language of R.C. 5301.56 the General Assembly enacted.

**{¶130}** Yet the majority has chosen to ignore the existence of the 2006 version and construe the 1989 version in a vacuum. This defies logic and the canons of statutory construction, a cornerstone judicial interpretive tool created and followed to honor the principle of separation of power and balance the respective constitutionally defined roles of the legislative and judicial branches. The Ohio Constitution has vested the General Assembly with the exclusive, plenary authority to enact legislation. Specifically, it has exercised that authority to clarify and correct an ambiguous statute, without intervention from the judiciary. There is nothing in Ohio constitutional, statutory or common law which requires that the courts must first address a statutory ambiguity; that the General Assembly cannot recognize and correct the ambiguity on its own accord. To so hold interferes with a separate branch's constitutionally defined authority.

**{¶131}** More importantly, the 1989 ODMA's lack of notice provisions makes it unconstitutional on its face, and by construing it as a self-executing statute resulting in automatic abandonment of a severed mineral interest by the holder and vesting that interest in the surface fee owner, the 1989 ODMA is unconstitutional as applied.  Such a statutory construction results in an unlawful taking by operation of law, proscribed by Ohio Constitution, Article I, Sections 1 and 9, and as construed by the Ohio Supreme Court.  Thus, the 1989 ODMA is unenforceable.

**{¶132}** Accordingly, the trial court's decision should be reversed, and title to the severed mineral rights quieted in the Shepherds.